H. J. BECK ET AL. v. THE BANK OF THOMASVILLE AND
J. L. ARMFIELD.

(Filed 20 December, 1912.)

1. **Instructions—Verdict, Directing—Evidence, How Considered.**

When the trial judge directs a verdict against the plaintiff he is entitled to have his evidence, without regard to the defendant's contradictory evidence, considered in the light most favorable to him, as in judgments of nonsuit, for any competent evidence in his favor should be passed on by the jury.

2. **Slander—Infamous Offense—Actionable Per Se—Interpretation of Statutes.**

In an action to recover damages for slander, the defendant's accusation that plaintiff had embezzled lumber or money is equivalent to charging him with the commission of a felony, or infamous offense, punishable by imprisonment in the penitentiary, as in cases of larceny (Revisal, sec. 3406), and is actionable *per se.*

3. **Slander—Actionable Per Se—Malice—Presumptions.**

Malice, an essential element of slander, is generally presumed where the words spoken are actionable *per se,* until the truth thereof is proved, except where the occasion is privileged or *prima facie* excuses the publication.

4. **Slander—Malice—Presumptions—Evidence—Rebuttal.**

The presumption of malice, in an action to recover damages for slander, when the words spoken are actionable *per se,* may be rebutted.

5. **Slander—Actionable Per Se—Evidence—Questions for Jury.**

Where, in an action for slander, the words spoken are actionable *per se,* and the evidence is conflicting, the question should be submitted to the jury, with the burden of proof on defendant to show whether the defendant uttered the slanderous words maliciously, or whether they were true, and, if so, whether he was justified or excused in doing so.

BECK *v.* BANK.

**6. Usury—Release—New Debt—Interest—Right of Borrower.**

In an action to recover upon an usurious contract under our statute, usury in a certain sum was alleged, and upon reference it was ascertained that usury in a certain lesser sum had been received, and that the parties had come to an agreement whereby the lender was released from liability on account of the usurious transaction, being denominated in the release as "all amounts paid in excess of the legal rate of interest": *Held*, the borrower had the right to release the lender from liability on the usurious contract, and his release freed the original contract from the taint of usury, thereby making a new principal of indebtedness, bearing the legal rate of interest.

**7. Appeal and Error—Lower Court—Judgment—Correction—Execution—Joined Causes—New Trial—Procedure.**

The lower court, upon the report of the referee, having erroneously credited the defendant a certain sum on an usurious contract, in this case, and the judgment in all other respects being approved on appeal, it is *Held*, that the judgment be accordingly amended, and execution issue thereon; and this action having been consolidated with an action of slander, and error therein found, a new trial is awarded therein.

APPEAL by plaintiff from *Allen, J.,* at April Term, 1912, of DAVIDSON.

This case was before us at a former term, and is reported in 157 N. C., at p. 105. It is there stated that actions were brought by plaintiffs, the first to correct errors in their account with the defendant bank, plaintiffs alleging in this one of the actions that charges against them were wrongfully made by defendant bank, and checks were paid which were not drawn by them, and, further, that defendant bank refused to pay certain checks drawn by plaintiffs on it, when it had funds of plaintiffs on deposit fully sufficient to cover the total amount of the checks so drawn, and that by reason thereof plaintiffs were injured in their credit to the amount of $2,000. The other action was against the defendant J. L. Armfield, who was cashier of the bank, for defamation of character, and the plaintiffs make certain allegations therein as to the account between them, not necessary to be stated here, as they are eliminated by the referee's report and the rulings of the court thereon in favor of said defendant, the material allegation being that the defendant

J. L. Armfield charged publicly, falsely, and wrongfully, in the presence of several persons named in the complaint, that the plaintiffs were bankrupt or in an insolvent condition, and would have to retire from business, and, further, that the plaintiff H. L. Beck, had misapplied and embezzled lumber and money or funds, in his hands, belonging to others, with intent to injure H. L. Beck and the said firm, and thereby damaged the plaintiffs to the amount of $10,000.

The two actions were consolidated by consent, and the cause was then referred to Hon. E. L. Gaither to take and state an account of the transactions and dealings mentioned in the complaint, reserving the issues as to the slander for trial upon the coming in of the referee's report. The report was filed and several exceptions taken thereto by plaintiffs, some of which were allowed and others overruled. Plaintiffs then assigned errors and appealed, but the appeal was dismissed in this Court as premature (157 N. C., 105), as there was no final judgment, and the case was remanded to try the issues as to the slander, which were not submitted to the referee. That case was tried at April Term, 1912, of the Superior Court, upon the following issues:

1. Did the defendant Armfield publish of and concerning the plaintiff defamatory matters set out in the eighth paragraph of the plaintiff's complaint, as alleged in the complaint?

2. If so, were the same false and malicious?

3. Did the defendant Armfield publish of and concerning the plaintiff the defamatory matter alleged in the eleventh paragraph of the complaint, as alleged in said complaint?

4. If so, were the same false and malicious?

5. What damage, if any, are plaintiffs entitled to recover?

A witness for the plaintiffs testified that the defendant J. L. Armfield had, in his presence and hearing, charged that H. L. Beck had embezzled certain lumber, and that if he did not arrange the matter to his satisfaction, he would have to "take him up for it." Another witness testified that Armfield had said to him that Beck was "in pretty narrow straits"; in other words, he said that Beck had acted as an embezzler. We give his words here: "I can't tell the words exactly, but that he had

embezzled some one out of the money he had received on that note, and the best way out of it was for Beck to give us the mortgage and we could indorse it to him, and that Beck was liable for criminal prosecution. He said Beck had embezzled funds not properly applied, or something to that effect, and that he was liable for a penitentiary crime; that was the substance of what he said." This witness also stated that Armfield had threatened Beck with a criminal prosecution in order to obtain a mortgage for a debt the bank or Armfield held against him. There was evidence that Armfield said that he could put Beck in the penitentiary, and that the persons to whom he was speaking, Hall and Daniels, had better accept the new note and mortgage from Beck and assign it to the bank to make good his defalcation, as it was all in their family; and the note and mortgage were executed in consequence of the threat, and turned over to the bank, of which Armfield was the cashier. Armfield further stated that Beck had embezzled, and, "if he did not mind, he would be put in the penitentiary." Plaintiffs then offered in evidence the following part of paragraph 8 of defendant's answer: "The defendant admits telling Christopher Shaw that H. L. Beck was, in defendant's opinion, liable for prosecution, not only in the Delk matter, but on account of his conduct to defendant and others." Also a part of paragraph 11 of defendant's answer, viz., "and (he) does not deny having said that, in his opinion, the defendant H. L. Beck was liable to criminal prosecution." J. L. Armfield was a witness in his own behalf, and among other things testified: "I said to Christopher Shaw that I thought that H. L. Beck had done such dirty business that he was liable to be criminally prosecuted, and I say that now. I did not mean that as much about the Delk matter as the other matters, no more about that than others. When I stated in the eighth paragraph of my answer the following, 'Not only on account of the Delk matter, but on account of his other dealings,' that is a mistake; it is a typographical error. I did tell Christopher Shaw that H. L. Beck was liable to prosecution, not on account of the Delk matter, but other matters. When I made my answer I told my attorney to put it there, not on account of the Delk matter, but other matters.

BECK *v.* BANK.

Shaw told me he had understood that there were some papers
there with my signature to them. I did not intend to convey
to the mind of Delk in that letter that Beck had improperly
signed my name to any papers. I was in my usual humor when
I wrote it."

The "Delk matter" to which he refers in his testimony was
a letter written by J. L. Armfield to John B. Delk, 12 February,
1907, as follows:

DEAR SIR:—I have just learned that you have a contract with
H. L. Beck on which my name appears, and I beg to notify you
that this contract was made without my knowledge or consent,
and that at no time have I ever authorized him to sign any
agreement or contract for me, and that at no time have I been
in partnership business with him.

Yours very truly,

J. L. ARMFIELD.

H. L. Beck testified that there was such a partnership arrange-
ment, and that he committed no fraud or embezzlement. There
was much more testimony, but we have given the above sum-
mary, which will sufficiently show the bearing of the evidence
upon the issues and ruling of the court.

Plaintiffs excepted to the ruling of the court, which directed
a verdict for the defendant upon the issues, and appealed to
this Court.

*E. E. Raper and T. J. Shaw for plaintiffs.*
*Justice & Broadhurst for defendants.*

WALKER, J., after stating the case: We are of the opinion
that there was error in the ruling of the court. The question
being, whether there was any evidence to be submitted to the
jury, it is not necessary that we should set out the testimony of
the defendant, which tends to contradict that of the plaintiffs,
for if there is any evidence to support the plaintiffs' case, they
are entitled to have it submitted to the jury, and as the court
directed a verdict against them, the plaintiffs are entitled to
have us consider it in the most favorable view for them. It is
like a nonsuit in this respect, and we have frequently said so

in such cases. *Brittain v. Westhall,* 135 N. C., 492; *Freeman v. Brown,* 151 N. C., 111; *Cotton v. R. R.,* 149 N. C., 227; *Deppe v. R. R.,* 152 N. C., 79; *Dail v. Taylor,* 151 N. C., 289; *Hamilton v. Lumber Co.,* 156 N. C., 519.

It will be seen from our recital of the material parts of the testimony that there is ample proof of the fact that the defendant uttered the slanderous and defamatory words imputed to him. As the accusation he made, that plaintiff, H. L. Beck, had embezzled lumber or money, was equivalent to charging him with the commission of a felony, or an infamous offense punishable by imprisonment in the penitentiary, "as in cases of larceny" (Revisal, sec. 3406), the burden is cast upon the defendant to prove the truth of the charge, or any matter in justification or mitigation. *Osborn v. Leach,* 135 N. C., 628; *Ramsey v. Cheek,* 109 N. C., 270; *Harris v. Terry,* 98 N. C., 131; *McKee v. Wilson,* 87 N. C., 300. Malice, which is an essential element of slander, is, generally speaking, presumed where the words are actionable *per se,* until the contrary is proved, except in those cases where the occasion is privileged or *prima facie* excuses the publication. This presumption, however, may be rebutted. Newell on Slander and Libel (2 Ed.), p. 39 (5) and 319, sec. 12, and cases *supra.* The question, therefore, whether the defendant maliciously uttered the slanderous words, and further, whether he was justified or excused in doing so, were clearly for the consideration of the jury, with the burden shifted to the defendant, if he did utter the words, to prove that they were true, or if not true, then to show matters in excuse or justification. There was sufficient evidence in this case to carry it to the jury and to place the burden of showing all defensive matter, including the truth of the accusation, upon defendant, because plaintiff had offered evidence that the charge was made in unambiguous and explicit terms, and that it was false. It involved, of course, the imputation of an infamous crime.

Coming to the account, as the matter is now before us on an appeal from a final judgment, we find that the main exception relates to the ruling of the court upon the question of usury. Plaintiffs made to J. L. Armfield on 16 May, 1906, their note for $5,500, secured by a mortgage on the property of the part-

nership, which was duly executed by them and their wives. It appears that they only received $4,500, and, as they alleged, the balance, or $1,000, was usurious interest. While the referee did not find explicitly that the $1,000 was illegal interest, he did find that the plaintiffs came to a settlement with the defendant, or the defendant with them, and the negotiations resulted in an agreement of compromise, which was reduced to writing and the substance of which is that J. L. Armfield agreed to pay and the plaintiffs to receive the sum of $600, and the latter, in consideration of the said sum, released Armfield from any and all liability for and on account of the said usurious transaction, and it is so denominated in the release, being called by circumlocution "all amounts paid in excess of the legal rate of interest for any and all money heretofore loaned to (plaintiffs) by J. L. Armfield," and "the said excess being $600, and the payment of the same, it is agreed, shall be in full settlement of all liability therefor and of any and all causes of action which can arise therefrom." This was undoubtedly an admission of the defendant that the transaction in which he took the note for $5,500 was tainted with usury, and that he was in danger of losing, not only his legal interest on the note, but double the amount of interest which had been paid to him by his debtors. He, therefore, very prudently and wisely set about to make terms with the plaintiffs, and to relieve himself of this statutory liability, by paying $600 in compromise and adjustment of the whole amount that might have been exacted. "The statutes of usury being enacted for the benefit of the borrower, he is at liberty to waive his right to claim such benefit and pay his usurious debt, if he sees fit to do so. It is, therefore, held that when the debtor becomes a party to a general settlement of preceding usurious transactions, made fairly and without circumstances of imposition, his recognition of the amount agreed to be due as a new obligation will preclude his setting up the old usury in defense of the new debt. This rule is not held to apply, however, unless it is clear that the debtor has fully accepted the settlement as a just debt separate and distinct from the preceding usurious obligations." 39 Cyc., p. 1024. The $600 thus paid to the plaintiffs became their money, and was in no way involved in

the account. Its payment in final settlement of the usurious transaction simply purged it of the taint, or eliminated the usurious feature, and reduced the principal to $4,500. That was the new principal and bore legal interest. If it be treated as a voluntary payment of money with full knowledge of the facts, which of course he had, it could not be recovered by direct action, or by way of set-off or counterclaim, there being no fraud, duress, or other equitable element in the transaction. 30 Cyc., 1298. The referee charged the plaintiffs, in the account between them and J. L. Armfield, not only with the note for $4,500, but also with the amount of $600, which had been received in settlement of the usury. This was error, and the mere fact that he had debited the plaintiff only with $4,500, deducting the illegal interest of $1,000 from the original principal of the note, did not warrant the charge. The settlement required this reduction of the principal to $4,500, and the $600, which was the consideration of it and the release of all causes of action for the usury, belonged necessarily to the plaintiffs. The judge sustained plaintiff's exception No. 9 (intended probably for 8) and No. 13, and directed the $200 to be deducted from the amount, $1,314.80, found to be due the Bank of Thomasville, with an allowance for interest. He also allowed a credit for the item of $575 claimed by the plaintiffs, and the one for $130 and interest, it being the $200 due for lumber, less $70 paid by defendant for freight charges. The judge, in passing upon the referee's report, found that the plaintiffs were indebted to the bank in the sum of $1,314.80, less the $200 credit and interest from 1 August, 1910, until paid, and so adjudged. He then found that plaintiffs were indebted to J. L. Armfield in the sum of $6,738.75, less the two credits of $575, with interest from 1 January, 1908, and $130 and interest from 1 August, 1910, and so adjudged. The last judgment was erroneous, as it includes the sum of $600, which was improperly charged to the plaintiffs, as we have already shown. The said judgment, the one in favor of J. L. Armfield, will be reformed so as to strike out the said charge and all interest therein, and the account will be restated, and the net balance due by plaintiffs to J. L. Armfield will be ascertained, upon the basis of our

ruling that defendant is not entitled to credit for the $600. In all other respects, the judgment of the court upon the report of the referee is approved, the remaining exceptions of the plaintiffs being, in our opinion, without merit. The credits allowed by the judge to the plaintiffs and interest will, of course, be deducted as ordered by him.

The clear result is that the account must be amended so as to conform to our opinion, and judgment entered accordingly, executions to issue thereon, and a new trial is ordered of the issues raised by the pleadings as to the slander or defamation of character. The court, no doubt, will permit the plaintiffs to amend their complaint, if so advised, so as to agree more closely with the evidence they have adduced.

Error.