T. G. HARTSFIELD v. HARVEY C. HINES COMPANY, A CORPORATION, AND HARVEY C. HINES, INDIVIDUALLY.

(Filed 18 February, 1931.)

1. **Libel and Slander B b—Privilege is a question of law to be determined by the court.**

    The question of whether slanderous words are privileged is a question of law for the court.

2. **Same—Where words are qualifiedly privileged the plaintiff must prove falsity and malice.**

    Where the slanderous words spoken of the plaintiff by the defendant are absolutely privileged, falsity and malice are irrebuttably negatived, but where the words are qualifiedly privileged the plaintiff must prove that they were falsely and maliciously uttered.

3. **Same—Words held to be qualifiedly privileged under the facts of this case.**

    Where the president of a corporation, after making investigation of reports of certain alleged misappropriations of its treasurer, summons him to his presence and inferentially charges him therewith in the presence of other officers or employees of the corporation having the duty of keeping the company's records, the accusations of the president are quali-

fiedly privileged, the president, officers and employees having an interest therein, and the treasurer in his action to recover damages for the utterance of the alleged slander must show that the words were spoken falsely and maliciously.

4. **Same—Evidence failed to show malice in utterance of words qualifiedly privileged and directed verdict would have been proper.**

In an action for slander uttered by the defendant as president of a corporation, inferentially charging its treasurer, the plaintiff, with misappropriating the company's property, evidence that the president and the plaintiff had always theretofore been on friendly terms, that the words were spoken in good faith and that the president appeared to be distressed at the time, is sufficient to support the finding of the court that the words spoken were spoken without malice.

5. **Same—Words spoken to police officer concerning misappropriations were qualifiedly privileged, the officer having an interest therein.**

Where a police officer has arrested an employee of a corporation having in his possession goods of the corporation that had been misappropriated, words spoken to the officer by the president of the corporation charging that another employee of the corporation had also misappropriated goods of the corporation are qualifiedly privileged, the president of the corporation and the officer having an interest in the matter, it being the duty of the officer to detect criminals.

6. **Same—In this case held: answer of defendant sufficiently pleaded qualified privilege.**

In an action to recover damages for slander justification and mitigation are comprehended in the defendant's answer alleging truth and privilege, especially when the facts from which the privilege springs are set up by the defendant and appear to be sufficient. C. S., 542.

CIVIL ACTION, before *Devin, J.*, at June Term, 1930, of LENOIR.

The plaintiff was employed by the individual defendant fourteen or fifteen years ago. Subsequently the business was incorporated and was thereafter known as the Harvey C. Hines Company. The plaintiff began work at $60 or $65 a month, and at the time of the utterance of the slanderous words, hereinafter complained of, he was making $4,200 per year. The plaintiff had general supervision of the entire business of defendant and was at the time the cause of action arose, treasurer of the defendant corporation and held a share of stock therein. The defendant corporation transacted a large volume of business and had many employees.

The evidence tended to show that the defendant Hines and the plaintiff were close friends and visited the homes of each other frequently, and each apparently had implicit confidence in the other. The defendant Harvey C. Hines was president of the corporation and in such capacity had general supervision and control of all the affairs of the company. Some time prior to 6 August, 1926, certain trusted employees

made certain complaints and reports to Harvey C. Hines, president, with respect to certain transactions of plaintiff, which tended to leave the impression that the plaintiff was misappropriating the money of his employer. As a consequence of such reports, the defendant, Harvey C. Hines, undertook to make an investigation of the transactions of plaintiff, in the course of which investigation he examined the plaintiff's bank account and other business transactions, and as a result of inquiries so made, the defendant Hines, on the morning of 6 August, 1926, called the plaintiff into his private office. At the time there were also in the office Mr. Walters, Mr. Weise, and Mr. Small, who were all trusted employees of the corporation. Walters was vice-president of the company; Weise was head bookkeeper, and had charge of invoices and records, and Small was night clerk or the man in charge of the business during the night. These were the only persons in the private office of defendant Hines.

The conversation in the private office was narrated by the plaintiff as follows: I took a seat opposite Mr. Hines. He said: "Tom, I guess you know what I want to talk with you about?" I told him I did not. He said, "Well, we feel like you have not been dealing fair with us," and I said, "I don't understand any such accusation and I would like for you to explain," and he said, "I mean that you have simply been dishonest with us and I have made my investigation and am pretty well satisfied." I said, "You may be satisfied, but I would like to be satisfied. I would like for you to tell me what you are getting at." He said it did not need any explanation, and he said, "You don't deny these papers, do you?" He laid before me certain papers, and I told him those papers did not mean anything, and I asked him if he had anything besides that, and he said Mr. Small was his eye witness. I continuously asked him if he would not give me some definite reason for it. He said no, it did not need any explanation, and all he was going to ask of me was to resign, and he would not prosecute me, and that that was all that was necessary. I told Mr. Hines I would hand in my resignation, but first I would like for him to let me know just what his charges were, and if he would I would like to talk to him privately, and that instant we left the office and went out in the warehouse, etc.

The defendant offered testimony tending to show that the plaintiff did not deny misappropriating money, but confessed to the same. Employees of defendant testified that when the defendant returned from the warehouse where he and plaintiff had had a private conversation that the defendant Hines was shedding tears and was greatly distressed over what he considered the unfaithfulness of a trusted friend. The plaintiff, however, denied that he ever made any confession in private.

The defendant pleaded truth and justification. The defendant filed

an itemized list of money and property which he claimed the plaintiff had appropriated to his own use. This list appears in the record as "Exhibit A" and consists of a certain sum of money in the compartment of the safe of the corporation used exclusively by the plaintiff. In addition to sums of money the said "Exhibit A" charged that the plaintiff had taken goods, wares and merchandise from the defendant's store for his own consumption, consisting of coca cola, coal, canned goods, and other items.

The plaintiff, as a witness in his own behalf, offered evidence tending to explain the items of money. Some of these items of money the plaintiff contended belonged to the Ku Klux and represented collections turned over to him from time to time by members of said order.

On 2 October, 1926, Asa C. Hawkins, a deputy sheriff of Lenoir County, arrested Mr. Small, an employee of defendant corporation, and one of those present on 6 August at the conference between the plaintiff and the defendant when the first alleged slanderous utterances were made by defendant Hines. Small was charged with illegal possession of whiskey. The evidence tended to show that on 2 August, 1926, at about 2 o'clock in the morning the defendant Hawkins called the defendant Hines over the telephone and informed him that he had arrested one of his employees. Thereupon Hawkins, in company with Mr. Wilcox, chief of police, went to the home of Mr. Hines. Hines came out on the porch in his bath robe and it was then between 1, 2 or 3 o'clock in the morning. Hawkins reported to Hines that he had one of his employees under arrest for violation of the law, and that he had found some of the property of the corporation down in the woods where the arrested employee was. The deputy sheriff testified that he "made a remark to him (Hines) that it was probably where some of his shortage came from. Hines replied, 'Tom (plaintiff Hartsfield) has been at that for two or three years.' " There was no evidence that Wilcox, the police officer, heard any of the conversation.

This conversation before daybreak at Hines' house on the second day of October, 1926, constitutes the second cause of action.

At the conclusion of the evidence the trial judge held as a matter of law that the conversation of 6 August, 1926, in the private office of defendant Hines was privileged and withdrew from the jury all consideration of the first cause of action based upon said conversation. In deference to such intimation of the court the plaintiff took a nonsuit as to the first cause of action and assigned the ruling of the judge as error.

Thereupon, the trial judge submitted the following issues to the jury:

1. Did the defendant, Harvey C. Hines, on or about 2 October, 1926, and in the presence of Asa Hawkins, speak of and concerning the plaintiff in substance the words alleged in the complaint?

2. If so, were they true?

3. What compensatory damages, if any, is the plaintiff entitled to recover therefor?

4. What punitive damages, if any, is the plaintiff entitled to recover therefor?

The jury answered the first issue "Yes"; the second issue "No"; the third issue "$10,325"; the fourth issue "$2,766.66."

The trial judge in his discretion set aside the verdict as to the fourth issue relating to punitive damages, and thereupon entered judgment that the plaintiff recover from the defendant, Harvey C. Hines, the sum of $10,325, with interest from 9 June, 1930, until paid. It was further ordered that the plaintiff recover nothing of the corporate defendant.

The plaintiff testified in reference to the relation between Hines and himself that up until 6 August, 1926, "I had always considered that my relations with Mr. Hines had not only been most pleasant, but had been cordial. I considered it so up until this very hour. He had shown me every consideration that I could expect from him. He had always treated me in a nice way. I felt like I had served him properly and he always respected me."

From judgment rendered both parties appealed.

*George C. Green, McLean & Rodman, Whitaker & Allen and Rouse & Rouse for plaintiff.*

*Dawson & Jones, Sutton & Green, F. E. Wallace and Varser, Lawrence & McIntyre for defendant, Harvey C. Hines.*

BROGDEN, J. The determinative questions of law presented by the record are:

1. Was the trial judge correct in holding that the conversation on 6 August, 1926, in the private office of defendant was privileged?

2. Was the conversation between the defendant and the deputy sheriff, Hawkins, on 2 October, 1926, privileged?

3. Must privilege be expressly pleaded where the defendant pleads truth and justification?

With reference to the first cause of action, based upon the conversation of 2 August, the judge charged the jury as follows:

"As to the first occasion, 6 August, 1926, the uncontradicted evidence is that the words were spoken by the defendant Harvey C. Hines as president of the Harvey C. Hines Company and were spoken to the plaintiff, who at that time was an officer and employee of that company, and were spoken in the presence of other employees of the company in respect to a matter as to which each of them had an interest, and, therefore, the communication was a qualifiedly privileged one and

no action for damages would lie, therefore, unless the words were spoken with actual or express malice, in the sense of ill will, grudge, revenge or desire to injure, and as to the utterance of 6 August, 1926, there is not sufficient evidence to be submitted to you that Harvey C. Hines was at that time and on that occasion and under those circumstances actuated by express malice, and the court having at the close of the testimony so announced these views as to the law, and that it would so charge the jury, the plaintiff in deference to such intimation of the court, took a nonsuit as to the cause of action based on the alleged slander on 6 August, 1926, and, therefore, that part of the case is removed from your consideration and issues are submitted to you now only as to the utterance alleged to have been made by the defendant, Harvey C. Hines, to Asa Hawkins on 2 October, 1926."

The foregoing instruction is in accord with authority established by the decisions of this Court. *Ramsey v. Cheek,* 109 N. C., 270; *Gattis v. Kilgo,* 128 N. C., 402; *Gattis v. Kilgo,* 140 N. C., 106; *Fields v. Bynum,* 156 N. C., 413; *Beck v. Bank,* 161 N. C., 201; *Brown v. Lumber Co.,* 167 N. C., 9; *Elmore v. R. R.,* 189 N. C., 658; *Tripp v. Tobacco Co.,* 193 N. C., 614; *Ferrell v. Siegle,* 195 N. C., 102; *Newberry v. Willis,* 195 N. C., 302.

Privilege is a question of law and is to be determined by the court. The idea was expressed in *Gattis v. Kilgo,* 140 N. C., 106, as follows: "The standard of privilege is the standard of the law, not of the individual, and the privilege depends, not on what the individual may have supposed to be his interest or duty, but upon what a judge decides, as matter of law, his interest or duty to have been. The court determines what is and what is not privileged."

The legal distinctions between absolute and qualified privilege are pointed out in the decisions. Qualified privilege rests upon the fact of interest or duty. That is to say, if the speaker of the alleged slanderous words has an interest or duty in the subject-matter of the conversation, and the hearer has an interest or duty with respect to the subject-matter of the conversation, then the doctrine of qualified privilege applies. "If the words are actionable *per se* in 'unprivileged' slander and libel, falsity and malice are prima facie presumed. If 'absolutely privileged,' falsity and malice are irrebuttably negatived, and if it is a case of 'qualified privilege,' falsity and malice must be proven." *Newberry v. Willis,* 195 N. C., 302.

Applying the law to the conversation of 6 August, 1926, in the private office of the defendant, it is clear that all parties present had an interest in the subject-matter of the conversation. The subject-matter of the conversation disclosed by the evidence was certain irregularities in handling the cash, invoices and other records of the business. The

plaintiff had an interest in these transactions because he was the treasurer of the company and charged with the duty of preserving the property and records of his employer. Walters, who was present, had an interest in the subject-matter of the conversation because he was vice-president of the company. Weise had an interest because he was head bookkeeper and charged with the duty of preserving the records and property of his employer. Small had an interest because he was in charge of the business at night, and it was likewise his duty to preserve and properly account for invoices and property of his employer coming into his hands. Certainly the defendant Hines, as president of the corporation and as the active head of its transactions, had an interest in the subject-matter of the conversation and was in like manner charged with the duty of preserving the property and records of the corporation. Moreover, there was no evidence of such malice as the law recognizes as sufficient to overthrow the qualified privilege of the occasion because the plaintiff testified that the relations between him and the defendant had been close, friendly and cordial up to the very moment of the conference.

Therefore, we hold that the trial judge ruled properly in excluding the first cause of action from consideration by the jury.

The second cause of action involves the conversation between the defendant and a deputy sheriff. The evidence discloses that the conversation took place before daybreak at the defendant's home, and that he was presumably called from his bed by the officer and apprised of the fact that a trusted employee, to wit, one Small, was under arrest, and that certain property of the defendant corporation had been found in the woods where Small had been. The conversation between the deputy sheriff and the defendant is not clearly expressed in the evidence, but the unmistakable inference from the words used compel the conclusion that the officer intended to suggest to the defendant that Small was the party responsible for the shortage in the business. Small was one of the persons present at the conference between the plaintiff and the defendant on 6 August, and was at the time of the officer's visit a trusted employee of the defendant corporation and in charge of its property and records during the night time. The bald intimation made to the defendant by the officer was that Small and not the plaintiff was guilty of misappropriation, if such had occurred.

In this situation, what was the defendant to do? Should he stand mute or should he reply to the accusation thus made? He chose to speak the words set out in the record. It is to be assumed that the officer approached the defendant in the dead hours of the night in good faith, and for the sole purpose of bringing the wrongdoer, whoever he was, to account. He was employed by the State for that exclusive pur-

pose. Thus the officer had an interest in the occasion. The defendant likewise had an interest in the subject-matter of the conversation and was charged with a duty with reference to the accusation made by the officer.

The courts and textwriters have discussed the question as to whether a communication to such officers, made in good faith and without malice, is justified under the doctrine of qualified or absolute privilege. See *Stevens v. Allen,* 15 A. L. R., 245; *Shinglemeyer v. Wright,* 124 Mich., 230, 50 L. R. A., 129; *Parker v. Kilpatrick,* 126 Atlantic, 825. In the *Parker case, supra,* the Supreme Court of Maine holds that words spoken to a police officer, peace officer, or deputy sheriff, either for the detection of crime or for the protection of his own property, if made in good faith and without malice, are privileged. To like effect are the words quoted in the case of *Logan v. Hodges,* 146 N. C., 38, as follows: "Words charging a party with theft, spoken in good faith, under a belief of their truth and with probable cause, to a police officer employed to detect the robber, are in the nature of a privileged communication." As all police officers and sheriffs are employed by the State to detect crime, it is not apprehended that they should be specifically employed by a particular individual in order to permit him to claim the protection of qualified privilege.

Applying the accepted principles of law to the facts disclosed, we are of the opinion and so hold, that the conversation of 2 October, 1926, was subject to the defense of qualified privilege, and, therefore, we deem the ruling of the trial judge to the contrary, as erroneous.

The third question of law involves the question as to whether privilege must be specifically pleaded. C. S., 542, expressly provides that a plea of justification and mitigating circumstances may be set up in the answer as a defense to an action for slander. Apparently the statute contemplated that privilege was a form of justification. Certainly in the forum of reason justification is a general term broad enough to cover both truth and privilege. At any rate the facts from which the privilege springs are set forth in the answer. The plaintiff relies upon *Gudger v. Penland,* 108 N. C., 593, but an examination of that decision discloses that the court had in mind the allegations of the complaint rather than defenses required to be set up in the answer, and we do not deem this case decisive of the question.

Questions of the admissibility of evidence and exceptions to the charge of the court have been debated in the briefs, but as a new trial must be awarded for the reason hereinbefore set out, we do not discuss or decide the points of law raised by said exceptions.

Plaintiff's appeal: No error.

Defendant's appeal: New trial.