Robert Gordon **BRITT**, Plaintiff,

v.

**KNIGHT PUBLISHING COMPANY,**
Defendant.

Civ. A. No. 66–237.

United States District Court
D. South Carolina,
Rock Hill Division.

Nov. 1, 1968.

See also D.C., 42 F.R.D. 593.

Terrell L. Glenn, and Charles Porter, of Glenn & Porter, and Henry Hammer, Columbia, S. C., for plaintiff.

David W. Robinson, Columbia, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

Plaintiff instituted suit for libel, tried before the court and a jury at Spartanburg, South Carolina, September 16th and 17th, 1968. The jury rendered a verdict in favor of plaintiff for actual damages.

Defendant now moves for a judgment in its favor, notwithstanding the verdict, on the grounds:

1. The court should have directed a verdict for the defendant upon the ground that the publications were qualifiedly privileged and there was no evidence of express or actual malice.

2. The court should have directed a verdict for the defendant upon the ground that the evidence showed conclusively that the plaintiff by making the plates, printing likenesses of a $50.-00 Federal Reserve Note, and having these plates and likenesses in his possession violated the provisions of 18 U.S.C.A. § 474 which was the only crime which the newspaper articles said he had violated.

Knight Publishing Company owns and publishes both The Charlotte Observer, a morning daily, and The Charlotte News, an afternoon daily (except Sunday). Both papers have a general circulation over wide areas of North and South Carolina, particularly within a 100 mile radius of Charlotte, N. C. The publications are not denied.

On Thursday, July 16, 1964, the News published a story:[1]

**TOY MAKER HAD BILLS, PLATES.**
**SECRET SERVICE ARRESTS BRITT.**

Robert Gordon Britt, a 35-year-old Charlotte native who heads the General Toy Corp. in Concord, has been arrested on charges of possession of counterfeit bills and plates.

Vernon Spicer, special-agent-in-charge of the Secret Service here, said the arrest was the climax of an investigation by agents George Dipper and Johnny Guy and the Concord Police Department.

Eighteen plates for printing counterfeit $50 bills were found in a file cabinet at the toy firm yesterday, according to Mr. Guy.

Britt turned over 53 partial bills to the agents after he was arrested. There were 47 with the back side of the bill printed and only six with the front side.

\* \* \* \* \*

The case began in Orlando, Fla., when a car formerly owned by Britt was returned after repossession. A mechanic found 13 plates for a $50 note in a false panel in the trunk.

Discovery of another false panel under the dash revealed receipts for ink purchased in Jacksonville, Fla., under a name other than Britt's.

The material was turned over to the Secret Service and forwarded here because the car had been repossessed in Concord.

Mr. Guy said Britt admitted making the plates, buying the ink and printing the bills. No finished bills have been found.

Britt was given a hearing yesterday in Concord before U. S. Commissioner Fred Kestler. He was released on $1,000 bond.

On Friday, July 17, 1964, the Observer published:[2]

**TAR HEEL ACCUSED OF HAVING BOGUS BILLS AND PLATES.**

A Concord man has been arrested by the Secret Service and charged with possessing counterfeit bills and plates for printing them.

Robert Gordon Britt, 35, of 263 Grandview Drive, was arrested by Charlotte Secret Service Agents Johnny Guy and George Dipper.

Guy said 13 plates for $50 notes were found hidden in the trunk of a car that had been repossessed from Britt recently.

Britt had purchased the car in Orlando, Fla., and it was taken to Orlando for reconditioning, Guy said. A mechanic working on the car found the plates in a concealed compartment, Guy said, and notified the Secret Service.

Guy said no bogus $50 notes had appeared in the Charlotte area.

Guy said the arresting officers found a number of partially printed notes at Britt's home.

Some of the notes were fronts of $50 bills; others were backs. The halves were printed separately and glued together, Guy said.

He said the paper on which the bills were printed was bad, of a quality which would be easy to detect.

1. Subject of plaintiff's first cause of action.

2. Subject of plaintiff's second cause of action.

Britt was given a hearing before a U. S. Commissioner in Concord and freed on $1,000 bond.

Defendant insisted at trial and again in its motion that the publication was privileged. The court, guided by North Carolina ruling [3] ruled on trial that the issue was for the court, decided the publication(s) was not privileged and submitted the issue of libel to the jury. At the same time the court ruled that there was an absence of proof of such express malice as would support a verdict of punitive damages. As stated in Broadway v. Cope, 208 N.C. 85, 179 S.E. 452, 455 (1935), to justify punitive damages:

The defendant's conduct must have been actually malicious or wanton, displaying a spirit of mischief toward the plaintiff, or reckless and criminal indifference to his rights.

For further clarification of the distinction between express and implied malice, and the resulting effect on damage award see Roth v. Greensboro News Co., 217 N.C. 13, 6 S.E.2d 882, 887; Jones v. Hester, 262 N.C. 487, 137 S.E.2d 846, 847; Bouligny v. United Steel Workers of America, 270 N.C. 160, 154 S.E.2d 344, 353.

The articles in question describe court proceedings against plaintiff. They correctly catalogue the fact that he was charged, by the United States authorities, with violation of Section 474 [4] of the United States Criminal Code. In ad-

---

3. See Hartsfield v. Harvey C. Hines Co., 200 N.C. 356, 157 S.E. 16 (1931).

4. 18 U.S.C. § 474 provides: Plates or stones for counterfeiting obligations or securities.

Whoever, having control, custody, or possession of any plate, stone, or other thing, or any part thereof, from which has been printed, or which may be prepared by direction of the Secretary of the Treasury for the purpose of printing, any obligation or other security of the United States, uses such plate, stone, or other thing, or any part thereof, or knowingly suffers the same to be used for the purpose of printing any such or similar obligation or other security, or any part thereof, except as may be printed for the use of the United States by order of the proper officer thereof; or

Whoever makes or executes any plate, stone, or other thing in the likeness of any plate designated for the printing of such obligation or other security; or

Whoever sells any such plate, stone, or other thing, or brings into the United States any such plate, stone, or other thing, except under the direction of the Secretary of the Treasury or other proper officer, or with any other intent, in either case, than that such plate, stone, or other thing be used for the printing of the obligations or other securities of the United States; or

Whoever has in his control, custody, or possession any plate, stone, or other thing in any manner made after or in the similitude of any plate, stone, or other thing, from which any such obligation or other security has been printed, with intent to use such plate, stone, or other thing, or to suffer the same to be used in forging or counterfeiting any such obligation or other security, or any part thereof; or

Whoever has in his possession or custody, except under authority from the Secretary of the Treasury or other proper officer, any obligation or other security made or executed, in whole or in part, after the similitude of any obligation or other security issued under the authority of the United States, with intent to sell or otherwise use the same; or

Whoever prints, photographs, or in any other manner makes or executes any engraving, photograph, print, or impression in the likeness of any such obligation or other security, or any part thereof, or sells any such engraving, photograph, print, or impression, except to the United States, or brings into the United States, any such engraving, photograph, print, or impression, except by direction of some proper officer of the United States; or

Whoever has or retains in his control or possession, after a distinctive paper has been adopted by the Secretary of the Treasury for the obligations and other securities of the United States, any similar paper adapted to the making of any such obligation or other security, except under the authority of the Secretary of the Treasury or some other proper officer of the United States—

Shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

dition to reporting the facts incident to such charge, defendant published:

In the News:

> Britt turned over 53 partial bills to the agents after he was arrested. There were 47 with the back side of the bill printed and only six with the front side.
>
> &ast; &ast; &ast; &ast; &ast;
>
> The case began in Orlando, Fla., when a car formerly owned by Britt was returned after repossession. A mechanic found 13 plates for a $50 note in a false panel in the trunk.

In the Observer:

> Guy said 13 plates for $50 notes were found hidden in the trunk of a car that had been repossessed from Britt recently.
>
> Britt had purchased the car in Orlando, Fla., and it was taken to Orlando for reconditioning, Guy said. A mechanic working on the car found the plates in a concealed compartment, Guy said, and notified the Secret Service.
>
> Guy said no bogus $50 notes had appeared in the Charlotte area.
>
> Guy said the arresting officers found a number of partially printed notes at Britt's home.
>
> Some of the notes were fronts of $50 bills; others were backs. The halves were printed separately and glued together, Guy said.

From the testimony, it appears these statements are inaccurate. Plaintiff's case is based on the theory that, in addition to publishing facts of his involvement under 18 U.S.C. § 474, that the "added" facts impute to him a crime under provisions of 18 U.S.C. 471.[5] It is obvious from reading the two code sections that section 474 does not charge a crime involving moral turpitude, that section 474[6] charges "intent to defraud."[7]

This court is unaware of a North Carolina decision on the extent and limits of privilege.[8] The ruling of the court at trial that the publication was not privileged was based on the majority rule in the United States as expressed in 53 C.J.S. Libel and Slander § 123 (b) (2), page 202:

> The report of an official or public proceeding, to be privileged, must present fully and fairly an impartial account of the proceeding. It must be accurate, at least with regard to all material matters. The publication may consist of an abridged or condensed statement; it is not necessary that the report be verbatim. A substantially accurate report may be privileged. However, it must contain the substance of the thing it undertakes to present, or the whole purport of any special, separable part. *It must not give undue prominence to inculpatory facts, and depress or minify such facts as will explain or qualify the former, and must not omit material points in favor of the complaining party or introduce extraneous matter of a nature injurious to him.* In short, the report must be characterized by fair-mindedness, honesty, and accuracy. (Emphasis added).

■ The rule that a newspaper account must be fair, impartial and substantially accurate is followed in other and surrounding jurisdictions. See Vaughan v. News Leader Co., 105 F.2d 360 (4th Cir. 1939); Wood v. Constitution Publishing Co., 57 Ga.App. 123,

---

5. 18 U.S.C. § 471. Obligations or securities of United States.

 Whoever, with intent to defraud, falsely makes, forges, counterfeits, or alters any obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

6. At the hearing on the N.O.V. motion counsel referred to 18 U.S.C. § 472. For the purposes of this discussion there is little, if any, difference.

7. See Webb v. United States, 6 Cir., 216 F.2d 151 (1954).

8. Nor was one cited to the court by counsel.

194 S.E. 760;[9] Times-Dispatch Pub. Co. v. Zoll, 148 Va. 850, 139 S.E. 504. In South Carolina, where the article was published in the Observer and News editions sent to that State, the Supreme Court has recently ruled in Jones v. Garner, S.C. (1968), 158 S.E.2d 909, 913:

> However, the privilege attending the publication of a news report arises by reason of the occasion of the communication, and a communication or statement which abuses or goes beyond the requirement of the occasion, loses the protection of the privilege. Cullum v. Dun & Bradstreet, Inc., 228 S.C. 384, 90 S.E.2d 370. The privilege extends only to a report of the contents of the public record and any matter added to the report by the publisher, which is defamatory of the person named in the public records, is not privileged.

Although North Carolina has not passed directly on the problem, Yancey v. Gillespie, 242 N.C. 227, 87 S.E.2d 210, 212, is authority for:

> One of the functions of a newspaper is to give information about public affairs and how public officials are carrying on the public business. *So long as that qualified privilege is not abused, an action for libel cannot be maintained.* (Emphasis added).

In view of facts brought out in the trial that there was *no* basis for the added language, inferring hidden compartments and the like, the court held that the abuse destroyed the qualified privilege. Nothing which has happened since has convinced this court that such was not the proper ruling.

■ Having determined the published matter was not privileged, the court examines the second grounds of the motion. If a qualified privilege existed here, plaintiff would be put to the task of proving actual or expressed malice in order to recover. Bouligny, Inc. v. United Steel Workers of America, 270 N.C. 160, 154 S.E.2d 344 (1967). Absent privilege the plaintiff was burdened to convince the jury that the added language was libelous per se, as such the language used implies or imputes malice sufficient to sustain an award of actual damages. See Beck v. Bank of Thomasville, 161 N.C. 201, 76 S.E. 722, 724 (1912); Roth v. Greensboro News Co., 217 N.C. 13, 6 S.E.2d 882, 887 (1940). Therefore, on the second ground defendant's motion must fail as evidence of actual malice was unnecessary after privilege was ruled out of the case.

■ Defendant further asks relief on the grounds that the evidence shows conclusively that plaintiff had violated 18 U.S.C. § 474. If such was all the publication inferred, of course plaintiff would have no case. The record reveals that the newspaper reporter who forwarded the story from Concord, N. C., to the papers could not tell the source of his information. The Secret Service Agent called as a witness negated the truth of the false panel containing plates and the fact that front and back of bills were glued together. In the opinion of the court there was a sufficiency of evidence to carry the case to the jury. See Ponder v. Coble, 257 N.C. 281, 126 S.E. 2d 67, 75 (1962). Especially is this true when one considers that the publication was made without checking the source of information or the authenticity of the added matter. The jury was fully charged on the burden of proof and the issues of fact for their determination.

No issue has been made as to the amount of the jury award.

Motion refused.

And it is so ordered.

---

9. At page 765 of Southeastern Reporter: "It is well settled that the publication of any statement by a newspaper made upon its own authority and not purporting to be a report of a judicial proceeding or information received from an arresting officer or a police authority, is not privileged under the law which renders privileged a fair and honest report of information received from any arresting officer or police authority."