ADOLPHUS JACKSON STEWART v. NATION-WIDE CHECK COR-
PORATION, A CORPORATION

No. 7026SC385

(Filed 5 August 1970)

1. **Libel and Slander § 14— qualified privilege — affirmative defense**

    Qualified privilege is an affirmative defense and must be pleaded
    in order that it might be raised.

2. **Libel and Slander § 16— words actionable per se — proof — directed
   verdict**

    Proof of the publication of false words which are actionable *per
    se* precludes the entering of a directed verdict.

3. **Libel and Slander § 2— words actionable per se — defamation of trade**

    Words uttered which tend to defame a person in his trade or
    business are actionable *per se,* and the issue is for the jury.

4. **Libel and Slander §§ 5, 10, 16— slander action — charge that employee
   was "short" in accounts — qualified privilege — directed verdict**

    In a slander action arising out of the corporate defendant's attempts
    to verify and collect an alleged arrearage in the accounts of the
    plaintiff, who was an employee of the defendant, a statement by the
    defendant's agent that the plaintiff was several thousand dollars "short"
    in his account, which statement was made to plaintiff's relatives during
    the agent's search for the plaintiff, is actionable *per se;* but the
    judgment of the trial court directing a verdict in favor of the corporate
    defendant is affirmed by the Court of Appeals, since the words of the
    agent, although shown to be false, were qualifiedly privileged and
    there was no showing of malice.

5. **Appeal and Error § 10.5— motion to amend answer in Court of
   Appeals**

    In a slander action, the Court of Appeals granted defendant's
    motion for permission to file an amendment to the answer setting forth
    the defense of privilege. Rule of Practice in the Court of Appeals No.
    20(c).

APPEAL by plaintiff from *Bryson, J.,* 19 January 1970
Schedule "B" Civil Session of MECKLENBURG County General
Court of Justice, Superior Court Division.

This action arises from the activities of the defendant,
Nation-Wide Check Corporation (Nation-Wide), in an attempt
to verify and collect an alleged arrearage in the accounts of the
plaintiff, one of its employees. The evidence tends to show that
Nation-Wide was in the business of selling money orders which

were issued on behalf of Nation-Wide through agents in various businesses in North Carolina. The plaintiff, A. J. Stewart (Stewart), was employed by Nation-Wide as sales representative for the State of North Carolina. His duties included supplying the various agents with materials such as blank money orders and machines with which to make out the money orders, as well as collecting and remitting to Nation-Wide the amounts taken in by the agents from the sales of the money orders. Stewart had with him, in connection with his duties, some thirty to fifty thousand dollars worth of money orders which could readily be made negotiable. In July 1968, it was discovered that one Daughety, who operated Daughety Super Market in Kinston, North Carolina, and was an authorized agent to sell the money orders, had sold more money orders than the funds remitted through Stewart would cover. Daughety owed something over $300 and Stewart was supposed to collect and remit this shortage. Stewart collected $100 on July 10, 1968, but did not report this. In the meantime, the failure of Stewart to make any reports to his superiors (his supervisor was on vacation) had prompted Nation-Wide to send one John Gormley to contact Stewart for an explanation. Gormley went to Daughety Super Market on 17 July 1968, as Stewart was to be there that day. Stewart did not appear and Gormley ascertained from Daughety that Stewart had collected the $100 a week before. Gormley attempted to reach Stewart through telephoning relatives, Mr. & Mrs. I. A. McQueen, in Fayetteville. Stewart had given Nation-Wide their telephone number as being a place to reach him.

Gormley informed Daughety that Stewart had misappropriated funds other than the $100 which Stewart had collected from Daughety. Gormley telephoned Fayetteville repeatedly in an effort to reach him. Stewart's aunt, Mrs. I. A. McQueen, testified that Gormley told her that the reason that Gormley wanted to see Stewart was because of financial problems with the company and that Gormley had to see him immediately to save Stewart's job. Claude M. Stewart, Jr., testified that at the request of his aunt, Mrs. McQueen, he answered the telephone, and Gormley informed him that the Nation-Wide officials had instructed him (Gormley) to stop trying to locate Stewart and that a statewide alert would be sent out for him. Mr. McQueen, Stewart's uncle, testified that on another telephone call Gormley had told him that a man down in Kinston had receipts to show that Stewart had misappropriated "several thousand dollars."

Gormley finally reached Stewart in Fayetteville on 18 July 1968, and in due course of time Stewart accounted for all property belonging to Nation-Wide which he had. He was, however, discharged on 12 November 1968.

This slander action results from statements that Gormley allegedly made to relatives of Stewart and to Daughety. At the conclusion of the plaintiff's evidence, the defendant moved to amend its answer to plead privilege and for a directed verdict. This judgment was entered by Judge Bryson:

"* * *

THIS CAUSE being heard before the undersigned Judge Presiding at the January 19, 1970 Schedule " " [sic] Civil Session of the Superior Court Division of Mecklenburg County and a jury, and at the conclusion of the plaintiff's evidence the defendant having moved the Court to grant it leave to amend its Answer as set forth in the Motion appearing of record;

AND the Court being of the opinion that the allowing of the Motion to Amend is unnecessary for a decision by the Court as to the merits of this controversy and that the motion of the defendant for a directed verdict should be allowed,

IT IS, THEREFORE, ORDERED AND DECREED:

1. That the defendant's Motion to Amend its Answer in the manner appearing in the Motion of record be denied, and

2. That the defendant's motion for a directed verdict be allowed, that the plaintiff's action be and the same hereby is dismissed, and that the costs of this action be taxed against the plaintiff.

This 22nd day of January, 1970.

T. D. BRYSON, JR.
Judge Presiding"

From the entry of this judgment, plaintiff appealed.

*B. Kermit Caldwell for plaintiff appellant.*

*Carpenter, Golding, Crews and Meekins by John G. Golding,*

*and Wardlow, Knox, Caudle and Wade, by Lloyd C. Caudle for defendant appellee.*

CAMPBELL, J.

[1] Qualified privilege is an affirmative defense and must be pleaded in order that it might be raised. *Bouligny, Inc. v. Steelworkers,* 270 N.C. 160, 154 S.E. 2d 344 (1967). In view of the fact that the trial judge ruled, in his judgment dismissing the action, that the motion of the defendant to amend its pleadings to include the allegations of privilege was "unnecessary for a decision by the Court as to the merits of this controversy and that the motion of the defendant for a directed verdict should be allowed," we must conclude that Judge Bryson did not dismiss this action on the basis that any statements made by Gormley, if slanderous, were qualifiedly privileged.

[2, 3] Proof of the publication of false words which are actionable *per se* precludes the entering of a directed verdict (or a nonsuit under the old civil practice). *Gillis v. Tea Co.,* 223 N.C. 470, 27 S.E. 2d 283 (1943). Words uttered which tend to defame a person in his trade or business are actionable *per se,* and the issue is for the jury. *Bell v. Simmons,* 247 N.C. 488, 101 S.E. 2d 383 (1958).

[4] We feel, consistently with the authority referred to above, that the words allegedly uttered by the agent of the defendant while he was acting within the scope of his instructions, *Gillis v. Tea Co., supra,* that is, to find Stewart and determine why he had not reported to his superiors, were actionable *per se.* As such, in the absence of privilege, the only remaining theory on which to sustain the action of the trial judge is a finding on his part that in law the words were true. Mr. I. A. McQueen testified:

> "I answered the phone and he told me he was Mr. John Gormley with Nation-Wide Check Corporation and that it was urgent that he find Jack Stewart and that he had a man in Kinston who had receipts to prove that he had paid Jackie several thousand dollars that he was short. That it was urgent that he get ahold to him at once because he had thirty thousand dollars worth of negotiable funds with him and he didn't know what amount he might have spent of that. He did not say as to how much it was that he was short. As to his saying to who he was short he did not. He said that

it was a customer in Kinston. As to when he said to me that there was several thousand dollars short and did he say who was in the shortage, he did not. He said that Jackie had the money. The man in Kinston had receipts where he had paid Jackie the money. As to his saying what if anything had Jack done with the money, he did not say. . . ."

The words published to Mr. McQueen could not be true in view of the other testimony offered by the plaintiff. As such, we find no theory upon which to support the action of the trial court in dismissing the action and entering a directed verdict pursuant to Rule 50 of G.S. 1A-1.

[5] Prior to the argument in this Court, the defendant again moved for permission to file an amendment to the answer setting forth the defense of privilege. Pursuant to Rule 20(c) of the Rules of Practice in this Court, we have allowed the motion. On the authority of *Hartsfield v. Hines,* 200 N.C. 356, 157 S.E. 16 (1931), and *Bouligny, Inc. v. Steelworkers, supra,* the communications of Gormley were qualifiedly privileged, and no malice has been shown. For this reason, the judgment of the trial court is

Affirmed.

BRITT and VAUGHN, JJ., concur.