ROSAMOND LAMM, BY HER NEXT FRIEND, S. K. LAMM, v. CHARLES
STORES COMPANY, INC.

(Filed 15 June, 1931.)

1. **Principal and Agent C d: Master and Servant D b—Evidence held insufficient to show that prosecution for worthless check was within scope of duties.**

Where the evidence in behalf of the plaintiff, in an action for false imprisonment, malicious prosecution and libel, tends to show that the general manager of one of the defendant's stores had a warrant issued against her for obtaining goods by means of a worthless check, that she did not give the check in question, that the general manager was authorized to cash checks only on his own responsibility, and that he had personally paid the defendant the amount of the check, that he wrote a letter to the plaintiff's father on the firm stationery threatening criminal prosecution, and the undisputed evidence is to the effect that the defendant did only a cash business, and there is no evidence that the general manager had ever collected accounts for the defendant: *Held*, upon defendant's motion of nonsuit the plaintiff's view must be adopted, and upon this theory the general manager of the defendant's store swore out the warrant without justification and without the sanction of any business transaction, and

such action was outside the scope of his duties, and was without authorization or ratification of the defendant corporation, and its motion as of nonsuit was properly granted.

**2. Same—Whether act is within scope of duties of agent or servant depends upon whether he was then engaged in service of employer.**

Where an agent, of his own motion, institutes a criminal action against another to avenge an imagined wrong done his employer, the employer is not liable therefor unless the action is authorized or ratified by him, and it is immaterial whether the agent or employee intended to secure a benefit for the employer, the employer's liability depending upon whether act is done by the employee in the line of duty and within the scope of the employment while attempting to accomplish what he was employed to do.

CLARKSON, J., dissents.

CIVIL ACTION, before *Small, J.*, at September Term, 1930, of PITT.

Plaintiff, the daughter of S. K. Lamm, lived at Lucama, N. C., and at the time of the injury complained of was a student at Eastern Carolina Teachers' College at Greenville, N. C. While a student at Greenville and away from home, the plaintiff had authority from her father, S. K. Lamm, to sign checks in his name.

The defendant alleged and offered evidence tending to show that on 28 July, 1927, the plaintiff drew a check on the Lucama Bank in words and figures as follows: "Pay to the order of Charles Stores Ten and no/100 Dollars. S. K. Lamm, per Rosamond Lamm." On the back of the check are the initials J. B. L. This check was paid by the bank upon which it was drawn and charged to the account of S. K. Lamm.

The plaintiff alleged and offered evidence tending to show that when she discovered said check in her father's bank statement, she notified him that she had not drawn the check and had had no transaction with the defendant, Charles Stores. Thereupon, the plaintiff informed the Bank of Lucama that the check was a forgery and said bank returned the check to the Bank of Greenville and from thence to the defendant. Thereafter, on 12 September, 1927, S. K. Lamm duly received through the mail the following letter: "Charles Stores Co., Inc., Inter-Office (your files). Date 9/12/27. Subject .......... ... Always give complete reference numbers, dates, etc. To Mr. S. K. Lamm: Please send cashier's check at once for $10.00 to cover payment of check you stopped payment of as this check was given by Rosamond Lamm and is no forgery unless you want warrant issued for Rosamond Lamm obtaining money under false pretense and forgery. We have given check over to our local magistrate with instructions to serve warrant which carries prison sentence for forgery. Unless cashier check or Western Union Money Transfer is here by Friday. Our witnesses are ready to identify the giver of this check. This is final—no more letters. Rush check here by Friday. Yours truly, Charles Stores Co." The amount of the

check was not paid, and on 14 November, 1927, J. B. Long went before a justice of the peace and made an affidavit to the effect "that on or about 28 July, 1927, Rosamond Lamm did unlawfully and feloniously obtain money by means of a worthless check, said Rosamond Lamm giving check to Charles Stores in payment of merchandise and cash, and signing check S. K. Lamm, per Rosamond Lamm, check given with intent to cheat and defraud contrary to the form of the statute and against the peace and dignity of the State," etc. Thereupon, the magistrate issued a warrant for the plaintiff, requiring her to appear before the County Court of Pitt County on 29 November, 1927. Pursuant to the warrant the plaintiff was arrested and afterwards appeared at the trial, pleading not guilty, and was adjudged not guilty. Subsequently, on 8 February, 1929, the plaintiff instituted this action for damages against Charles Stores, Inc., basing the action upon false imprisonment, malicious abuse of process and upon libel by reason of the letter of 12 September, 1927. The plaintiff testified that she never signed the check for $10.00, and that she had never been upon the premises of Charles Stores Co., Inc. There was other evidence in behalf of plaintiff that the signature upon the check was not in her handwriting. There was further evidence in behalf of plaintiff that J. B. Long was the manager of Charles Stores in Greenville, and that he had instructed the clerks in the store "not to take a check unless he O. K.'d them. . . . He had charge of all the departments. He was manager of the store. He was ruler over all."

The evidence for the defendant tended to show that plaintiff came in the store and made a purchase of merchandise, and in paying for the purchase wrote the check in controversy and delivered it to the clerk who waited upon her; that said clerk took the check to Long, manager, who approved and O. K.'d it, and the balance was paid to the plaintiff in cash. It also appeared without contradiction that the defendant operates a cash store, and that the manager, J. B. Long, had authority to hire and discharge clerks; that he received goods when they came in the store and paid the freight or express thereon, and that it was his duty to put the price on the goods and mark them, and to supervise the various clerks in the store. It was also in evidence without contradiction that the defendant Charles Stores on 24 August, 1925, had given written instructions to all managers. The only instruction pertinent to this appeal is number 2, in the following words: "If a manager cashes a personal check, it is on his own responsibility and he will positively be held responsible." It was also in evidence that Long, the general manager, cashed one hundred and fifty or two hundred checks every day, and that these checks were deposited to the credit of Charles Stores. There was further uncontradicted testimony that Long, the general manager, paid the check in controversy out of his personal funds to the Charles Stores,

Inc. All of the evidence disclosed that the plaintiff was a young woman of good character and of fine lineage.

At the conclusion of all the evidence, there was judgment of nonsuit, and the plaintiff appealed.

*Moore, Strickland & Dickens, W. A. Finch and Albion Dunn for plaintiff.*

*Harding & Lee and L. I. Moore for defendant.*

BROGDEN, J. Is a mercantile corporation liable in damages for the act of the general manager in issuing a warrant upon a forged check, supposed by him to have been given by a customer of the corporation?

There is ample evidence for a jury to find that the check in controversy was a forgery, and that the plaintiff had never been a customer of the defendant. A correct application of the principles of law governing the transaction rests entirely upon whether Long, the general manager of defendant corporation, was acting wholly beyond the scope of his employment in writing the letter complained of and in procuring the warrant for the arrest of the plaintiff. Much has been written upon the scope of employment, and the general outlines of the doctrine have been clearly marked. The term is elastic and correct interpretation and application thereof must always depend upon the variability of given facts. This legal variability has produced in this jurisdiction two well marked lines of decisions. The liability line is represented by the following decisions: *Lovick v. R. R.,* 129 N. C., 427; *Jackson v. Telegraph Co.,* 139 N. C., 347; *Bucken v. R. R.,* 157 N. C., 443; *Fleming v. Knitting Mills,* 161 N. C., 436; *Cotton v. Fisheries Products Co.,* 177 N. C., 56; *Gallop v. Clark,* 188 N. C., 186; *Kelly v. Shoe Co.,* 190 N. C., 406; *Colvin v. Lumber Co.,* 198 N. C., 776. The nonliability line is represented by the following decisions: *Moore v. Cohen,* 128 N. C., 345; *Daniel v. R. R.,* 136 N. C., 517; *Sawyer v. R. R.,* 142 N. C., 1; *Roberts v. R. R.,* 143 N. C., 176; *Dover v. Mfg. Co.,* 157 N. C., 324; *Marlowe v. Bland,* 154 N. C., 140; *Strickland v. Kress,* 183 N. C., 534; *Grier v. Grier,* 192 N. C., 760; *Ferguson v. Spinning Co.,* 196 N. C., 614; *Cotton v. Transportation Co.,* 197 N. C., 709; *Martin v. Bus Line,* 197 N. C., 720. There is an extensive annotation upon the general subject in 35 A. L. R., 637. See, also, *Md. Casualty Co. v. Woolley,* 36 Fed. (2d), 460.

The plaintiff bases her right to recover upon three major facts:

(a) That Long was general manager of the defendant, and therefore, clothed with extensive discretion;

(b) That many checks were taken by Long in payment of merchandise;

(c) That the letter was written upon the stationery of defendant, and that in writing the letter and issuing the warrant, the manager was thereby intending to benefit his employer and safeguard its rights.

LAMM *v.* CHARLES STORES CO.

· In *Kelly v. Shoe Co., supra, Varser, J.,* said: "The designation 'manager' implies general power, and permits a reasonable inference that he was invested with the general conduct and control of the defendants' business centered in and about their Wilmington store, and his acts are, when committed in the line of his duty and in the scope of his employment, those of the company." Obviously, it is not the size of the job that the offending agent holds which determines liability, but the quality of the act done in the line of duty. This essential distinction was noted in *Grier v. Grier, supra,* where it is written: "But liability in such cases is not ordinarily imposed upon the employer, by reason of the extent of the authority of the agent, but rather upon the purpose of the act and whether it was done in the furtherance of the employer's business or was reasonably incident to the discharge of the duties entrusted to the employee." *Strickland v. Kress, supra.*

Nor does the fact that Long, as manager, had received checks from other people in payment of merchandise, have any bearing upon the principle of law involved in this appeal, because plaintiff denies that any check was given. Neither is the fact that Long used the stationery of defendant determinative. Certainly, he was authorized to use it in the line of his duty, and the heading upon the stationery neither added to nor subtracted from his power as manager of the store. In the final analysis, the whole controversy reduces itself to the inquiry, was Long acting in the line of his duty when he wrote the letter forty-six days after the transaction, and procured the issuance of a warrant one hundred and nine days after the transaction? The undisputed evidence is to the effect that the defendant conducted a cash business. However, as the defendant contends, the plaintiff made a purchase and gave a check in part payment therefor, receiving the balance in cash. Then the check became an account due the defendant. There is no evidence that Long had ever collected an account from anybody or that any merchandise had ever been sold upon credit. Even if Long had authority to collect accounts, or such was within the line of his duty, resort to the criminal law by the agent, without the advice, counsel, or participation, knowledge or ratification of the principal, was not incidental to such collection. *Moore v. Cohen, supra; West v. Grocery Co.,* 138 N. C., 166.

The plaintiff insists that she did not sign the check, and furthermore, that she had never been in the store of defendant. Upon motion of nonsuit this view must be adopted. Hence it follows that the agent of defendant, without any justification and without the sanction of any sort of business transaction, undertook to invoke the criminal law against the plaintiff either by reason of mistaken identity or by virtue of a reckless notion that she had committed a crime. All the authorities are in agreement that if the agent, of his own notion, undertakes to set

in motion the machinery of the criminal law to avenge an imagined wrong against his employer, that such act does not impose liability upon the employer unless such employer authorized or ratified the conduct of the employee. It is immaterial that the employee intended by such act to secure a benefit for the employer. This view is supported by the declaration of the Court in *Kelly v. Shoe Co., supra,* as follows: "Liability does not flow from the employee's intent to benefit or serve the master, but it does flow from the acts of the servant or employee in attempting to do what he was employed to do, that is, the acts complained of must have been done in the line of his duty, and within the scope of his employment."

Viewing the evidence from the standpoint of plaintiff, her arrest and humiliation were wholly without warrant, and such conduct arouses a feeling of resentment and outrage. However, it was for this very reason that the wisdom of mankind has established courts of law for the purpose of giving to each citizen or litigant an abiding guarantee that his rights shall be determined, as far as humanly possible, in the cold neutrality of even and exact justice. The Court is of the opinion that the judgment of nonsuit was properly entered.

Affirmed.

CLARKSON, J., dissents.