PHILIP L. BROCKWELL v. WESTERN UNION TELEGRAPH AND CABLE COMPANY.

(Filed 13 December, 1933.)

1. **Malicious Prosecution B c—Testimony of conditions of jail held competent in action for malicious prosecution.**

In an action for malicious prosecution it is competent for plaintiff to testify, on the issue of damages, as to the condition of the jail wherein he was confined on defendant's warrant, when such testimony is confined to that issue and does not tend to show any neglect of legal duty by the jailer or persons in charge of the jail, such conditions being foreseeable by defendant.

2. **Principal and Agent C d: Malicious Prosecution A f—Evidence that defendant's agent acted within authority in causing arrest held sufficient.**

The evidence in this action for malicious prosecution tended to show that plaintiff was wired a certain sum of money by his brother and that through error of defendant's sending office, plaintiff was paid a sum in

excess of the amount wired, that the manager of defendant's receiving office had plaintiff arrested without probable cause and with malice in an attempt to recover the amount paid plaintiff in excess of the amount wired. Defendant moved for nonsuit on the ground that there was no evidence that its manager of the receiving office was acting within the scope of his authority in causing the arrest of plaintiff: *He'd*, defendant's motion of nonsuit was properly overruled, there being sufficient evidence that defendant's agent was acting within the scope of his authority. *Kelley v. Shoe Co.*, 190 N. C., 406, cited and applied.

APPEAL by defendant from *Cranmer, J.*, at March Term, 1933, of WAKE. No error.

This is an action to recover damages, both compensatory and punitive, for the unlawful and wrongful arrest and imprisonment of the plaintiff. The action was begun on 10 September, 1931.

It is alleged in the complaint that on 3 October, 1930, the plaintiff was arrested and imprisoned in Johnson City, Tennessee, on a criminal warrant which was procured by the defendant without probable cause, and with malice, and that the action which was instituted by the issuance of said warrant was dismissed at the request of the defendant prior to the commencement of this action.

It is further alleged in the complaint that as the result of his unlawful and wrongful arrest and imprisonment, the plaintiff suffered injuries in both mind and body, for which he is entitled to recover of the defendant damages, both compensatory and punitive, in a large sum, to wit: $15,000.

All the allegations of the complaint which constitute the cause of action alleged therein, are denied in the answer filed by the defendant. The defendant specifically denies in its answer that it procured or authorized the issuance of the criminal warrant on which the plaintiff was arrested and imprisoned, as alleged in the complaint.

The issues submitted to the jury were answered as follows:

"1. Did the defendant cause the arrest and imprisonment of the plaintiff, as alleged in the complaint? Answer: Yes.

2. If so, was the arrest without probable cause? Answer: Yes.

3. If so, was the arrest and imprisonment malicious? Answer: Yes.

4. Did the defendant cause the plaintiff to be arrested for the unlawful purpose of forcing the plaintiff to return money to the defendant, and not for the purpose of vindicating the law? Answer: Yes.

5. What damages, if any, is the plaintiff entitled to recover of the defendant? Answer: $2,000."

From judgment that plaintiff recover of the defendant the sum of $2,000, with interest and costs, the defendant appealed to the Supreme Court.

*R. L. McMillan, C. A. Douglass, Wm. F. Belew* and *Wm. F. Monogan* for plaintiff.
*J. C. Little* for defendant.

CONNOR, J. The plaintiff, Philip L. Brockwell, is a citizen of this State, and a resident of the city of Raleigh. He is a veteran of the World War, and was injured while in the military service of the United States. He is now 35 years of age, and from time to time, since the war, has been a patient in various hospitals maintained by the United States for the care and treatment of disabled veterans. He is well known in the city of Raleigh, where he owns an established business, and where he is generally regarded as a man of good character.

The evidence offered by the plaintiff at the trial of this action was sufficient to show the following facts:

On 3 October, 1930, the plaintiff was a patient in the National Soldiers Home, at Johnson City, in the State of Tennessee. He had been in said home, as a patient, since the 24th or the 25th of September, 1930. A few days prior to 3 October, 1930, the plaintiff had communicated with his brother, Edgar Brockwell, at Raleigh, N. C., by telegraph or telephone, and had requested his brother, who had charge of his business, during his absence from his home, to send him money. At that time, his brother had in his possession money which he had collected for the plaintiff. Having received no response from his brother, during the afternoon of Friday, 3 October, 1930, the plaintiff went to the office of the defendant, Western Union Telegraph and Cable Company, in Johnson City, and after a conversation with A. J. Bryant, the manager of said office, filed with the defendant a telegram addressed to his brother, at Raleigh, N. C., requesting his brother to send him money at Johnson City, Tennessee. No amount was named in the telegram, but on previous occasions, when the plaintiff had requested his brother to send him money, during his absence from home, his brother had sent him amounts varying from a few dollars to two hundred dollars. About two hours after he had filed the telegram with the defendant, to be transmitted to his brother, the plaintiff was notified that there was a telegram at the office of the defendant for him. He went at once to the said office, and was there informed by a clerk that the defendant had been directed by a telegram from its office at Raleigh, N. C., to pay to the plaintiff the sum of $108.00. The clerk hesitated to pay said sum to the plaintiff, without further identification, but upon being instructed by A. J. Bryant, the manager of the office, to pay said sum to the plaintiff, handed to the plaintiff defendant's check for $108.00, drawn on a bank in Atlanta, Ga., and payable to the order of the plaintiff. At the suggestion of A. J. Bryant, the manager of the office, the plaintiff en-

dorsed the check, and upon its delivery to the said manager, received from him the sum of $108.00, in currency. This transaction occurred during the afternoon of Friday, 3 October, 1930.

Some time during the morning of Saturday, 4 October, 1930, A. J. Bryant, the manager of defendant's office at Johnson City, was informed by a message received from the office of the defendant at Raleigh, N. C., that a mistake had been made by a clerk in the office at Raleigh in preparing the telegram of the previous day, requesting the payment of money to the plaintiff by the defendant at Johnson City, Tennessee. The amount which the defendant was directed to pay to the plaintiff should have been three dollars, instead of one hundred and eight dollars. A. J. Bryant, the manager of defendant's office at Johnson City, was requested by the defendant's office at Raleigh, to notify the plaintiff of the error and to demand of him the return of the sum of $105.00. A. J. Bryant was further notified by the Raleigh office, that if he failed to get the money from the plaintiff, the clerk in the Raleigh office, who had made the mistake, would be required to pay said sum to the defendant, and that if she should fail to do so, she would be discharged by the defendant.

Upon his receipt of the message from the Raleigh office, advising him of the error in the telegram of the previous day, A. J. Bryant at once began a search for the plaintiff, but could not find him on Saturday.

Early Sunday night the plaintiff was informed that his brother, Edgar Brockwell, had requested by telephone, that plaintiff call him at Raleigh, N. C. In consequence of this request, the plaintiff went to a hotel in Johnson City and put in a call for his brother at Raleigh. While plaintiff was in the hotel, waiting to talk with his brother over the telephone, A. J. Bryant, accompanied by a constable, came into the hotel, and at once pointed to the plaintiff, saying to the constable, "That is the man." The constable, in the presence of A. J. Bryant, demanded that plaintiff return to A. J. Bryant, the manager of defendant's office at Johnson City, the sum of $105.00. This demand was accompanied by a threat that if plaintiff did not return the money to A. J. Bryant, the constable would arrest him for embezzlement. A. J. Bryant then explained the situation to the plaintiff who declined to return the money until he could ascertain from his brother at Raleigh, whether or not a mistake had been made in the office of the defendant at Raleigh, as contended by the defendant. Plaintiff told the constable and A. J. Bryant that he would comply with their demand, if his brother told him that a mistake had been made by the defendant. Within a short time, the plaintiff talked to his brother at Raleigh, and was informed by him that a mistake had been made in the Raleigh office, and that he should refund to the defendant the sum of $105.00. The plaintiff then

told the constable and A. J. Bryant that he had spent all of the money paid to him by the defendant on Friday afternoon, except the sum of $90.00, and that this amount was on deposit with the Postal Savings Department of the post office at the National Soldiers Home. The plaintiff then delivered the certificates for said deposit to the constable, saying that he would go with him to the post office the next morning, get the money, and refund it to the defendant. The constable took the certificates, and immediately arrested the plaintiff under a warrant which was dated 4 October, 1930, and was issued on an affidavit signed by A. J. Bryant. In this affidavit, the money which it was alleged had been paid to the plaintiff by mistake and which plaintiff had fraudulently refused to return, was described as the property of the Western Union Telegraph and Cable Company. After his arrest by the constable in the presence of A. J. Bryant, the plaintiff was taken by the constable to the jail in Johnson City, where he was confined until the next morning. A. J. Bryant did not go to the jail with the constable, but remained in the hotel. The next morning the plaintiff was taken by the constable to the post office at the National Soldiers Home where the money was paid to the constable, who thereupon discharged the plaintiff from custody. The warrant was subsequently marked, "Settled, received my costs." The money was paid by the constable to A. J. Bryant, the manager of the defendant's office at Johnson City, Tennessee.

The plaintiff was confined during the night of Sunday, 5 October, 1930, in the jail at Johnson City, and as the result of his confinement and of the conditions in the jail, he suffered injuries, both mental and physical. He was deeply humiliated by his confinement. There was no heat in the jail and he contracted a deep cold, and was threatened with pneumonia. The plaintiff testified that he was worried over being locked up in the jail. He requested the jailer to let him communicate with relatives and friends. His request was denied. The next morning when he was taken from the jail by the constable he was "all to pieces, nervous and trembling." He had spent a sleepless night, lying on a cement floor, surrounded by prisoners who were drunk and filthy.

The evidence offered by the defendant tended to show that A. J. Bryant, who had signed the affidavit, on which the warrant was issued, was not present when the plaintiff was arrested by the constable; that after the plaintiff had agreed to return the money the next morning, and had delivered the certificates, showing that the money was on deposit with the Postal Savings Department of the post office, at the National Soldiers Home, A. J. Bryant left the hotel, first saying to the constable, "That is all we want. Let Mr. Brockwell go."

The only assignments of error on defendant's appeal to this Court are (1) that the trial court overruled its objection to the testimony of

the plaintiff with respect to the conditions in the jail, while he was confined there during Sunday night; and (2) that the trial court refused to allow its motion, at the close of all the evidence for judgment as of nonsuit. Neither of these assignments of error can be sustained.

The testimony of the plaintiff with respect to the conditions in the jail in which he was confined, was competent as evidence tending to show the cause of the injuries, both mental and physical, which he suffered as the result of his arrest and imprisonment, and the extent of such injuries. There was no testimony tending to show that these conditions were caused by the failure of the jailer, or of any person or persons in charge of the jail, while the plaintiff was confined therein, to perform any duty imposed by law with respect to said jail, or with respect to the plaintiff, as a prisoner therein. The conditions as shown by the evidence were such as the person or persons who caused the arrest and imprisonment of the plaintiff in said jail could well have foreseen. This evidence was competent on the issue as to damages, and was submitted by the court to the jury under proper instructions, as pertinent to that issue only. 11 R. C. L., p. 820. See *Seidler v. Burns* (Conn.), 79 Atl., 53, 33 L. R. A. (N. S.), 291, and note. While there are decisions to the contrary, the weight of authority is said to sustain the competency of evidence in actions to recover damages for malicious prosecution tending to show the conditions in the jail, where the plaintiff was imprisoned, as the result of his malicious prosecution by the defendant.

The evidence offered by the plaintiff in the instant case was amply sufficient to show that his arrest and imprisonment on the warrant procured by A. J. Bryant, without probable cause, and with malice, was unlawful and wrongful. This is not controverted by the defendant, although the evidence offered by the defendant tended to show the contrary. The defendant contends, however, that there was no evidence at the trial of the action tending to show its liability to the plaintiff for the unlawful and wrongful conduct of A. J. Bryant, the manager of its office at Johnson City, in procuring the warrant and causing the arrest and imprisonment of the plaintiff, for that such conduct was not within the scope of his employment by the defendant. This contention cannot be sustained.

The instant case is controlled by *Kelley v. Shoe Co.,* 190 N. C., 406, 130 S. E., 32, and not by *Lamm v. Charles Stores Co.,* 201 N. C., 134, 159 S. E., 444. In the opinion in each of these cases, the difficulty in drawing the line satisfactorily between cases in which there is evidence tending to show that the act of an employee was within the scope of his employment, and cases in which there is no evidence to that effect, is commented on. Without undertaking to distinguish these cases, and

other cases relied upon by the parties to this action, respectively, we are of opinion that there was such evidence at the trial of this action, and that for that reason there was no error in overruling defendant's motion for judgment as of nonsuit. All the evidence, both that offered by the plaintiff and that offered by the defendant, was submitted to the jury under instructions to which there was no exception. The judgment is affirmed.