SEAWELL, J., dissenting.
CLARKSON, J., concurs in dissent.
Civil action to recover for alleged assault, false arrest, and slander.
In the pleadings it is admitted that defendant is a corporation, existing under the laws of the State of North Carolina, with its principal office and place of business in the city of Asheville, in Buncombe County, in said State, where it conducts a general drug business on Patton Avenue; and that on 5 July, 1940, Richard E. Young, Jr., who is "the son of Richard E. Young, who is the sole manager of defendant corporation in so far as the conduct and operation of its business in said city . . . is concerned," "was in the employ of the defendant."
Plaintiff, further in his complaint, makes substantially these allegations: (1) That Richard E. Young, Jr., is a duly qualified agent, servant and employee of defendant, and "at times . . . hereinafter complained of was the clerk in charge of the cigar and tobacco counter in the defendant's drug store, and was at said times acting within the scope of his employment and in the furtherance of his master's business; (2) that on 5 July, 1940, as he, the plaintiff, "was in the act of leaving the store of defendant" which he had entered for the purpose of purchasing certain medicine, as was his custom over a period of years, Richard E. Young, Jr., "agent, servant and employee of defendant" as "clerk in charge of the cigar and tobacco counter in the defendant's drug store," "called out to him in a loud and angry tone of voice, ordering this plaintiff to halt and return and put down the cigars which the said Richard E. Young, Jr., . . . accused this plaintiff of having stolen from the cigar counter"; (3) that though plaintiff heard the words of said Richard E. Young, Jr., knowing that he was innocent of any guilt in connection with the larceny of defendant's property, continuing on his way, proceeded out of the store in the direction of the sidewalk on north side of Patton Avenue, but before reaching the sidewalk — "defendant, through its said agent, servant and employee" rudely seized this plaintiff's arm and stopped him, within the well lighted front areaway of defendant's storeroom, and thereupon directly accused the plaintiff of stealing two cigars from the defendant's cigar counter; (4) that plaintiff, still knowing and realizing his innocence, "advised Richard E. Young, Jr., . . . that he had not stolen any of the defendant's property and shook loose the restraining arm of the said Richard E. Young, Jr., and proceeded on and out of the store," and, when he was immediately in front of and *Page 598 
across the street from Imperial Theatre, he heard someone, whom he believes to be Richard E. Young, Jr., cry out to a policeman "Stop that man, he has stolen cigars from Eckerd's"; (5) that pursuant thereto, "a police officer of the city of Asheville stopped plaintiff, and in just a moment" said "Richard E. Young, Jr., came upon the scene" and "demanded that the officer search this plaintiff . . . because plaintiff had stolen two cigars from the defendant"; (6) that after admonishing said Young, Jr., to be certain of his accusation, and after said Young, Jr., had reasserted that he was certain and had again demanded the search, "the said police officer subjected this plaintiff to a humiliating, embarrassing and entirely unnecessary search, and as a result of said search found no cigars of any nature or character whatsoever on the person, or in the clothing of this plaintiff"; (7) and that as a result plaintiff has suffered injury and damage in manner and amount set forth.
Defendant, in answer filed, denies the material allegations of the complaint, and as further defenses, inter alia, avers an express denial (1) that Richard E. Young, Jr., or any other person, while in the employ of defendant, and while acting within the scope of his or her authority, made any statements malicious or with any feeling to or about the said plaintiff; or (2) that this defendant, or anyone acting in its behalf, arrested plaintiff or caused him to be arrested. Defendant further avers (a) that such detention of plaintiff, as there may have been, was caused by an officer attached to the police department of the city of Asheville, for whose acts defendant is nowise liable; and (b) that such acts and statements of the said R. E. Young, Jr., of, toward, about and concerning plaintiff were contrary to defendant's policy and positive instruction, to wit, never to accuse or cause the arrest of any person on a charge of theft in or about defendant's retail establishment, and that such acts and statements of said Young, as alleged in this complaint, were and are outside the scope of his authority.
In the trial court, plaintiff as a witness for himself, describes the occurrence in this manner: "I was in their store in Asheville on July 5, 1940, . . . to purchase medicine . . . I bought and paid for the medicine . . . After I purchased the medicine and it was delivered to me, along with the cash register slip, I came out of the store. Before I got on the sidewalk I heard somebody say, `Wait a minute.' It was the clerk behind the cigar counter who said that to me. . . . When that young man said that to me, I did not wait, but went on down the street. I did not stop because I did not think he was speaking to me. As I came out I heard another voice behind me say, `Wait a minute.' It was the man behind the counter, that young man over there that I just identified (R. E. Young, Jr.). I did not wait at that moment, as I just explained to you, but continued to walk on. Just before I did *Page 599 
stop, the police said, `You are wanted in the drug store' . . . Well, I stopped and then the young man from the drug store said to put back the cigars that I had taken . . . I am talking about that young man who was the person behind the counter . . . I said to him that I had not taken any cigars off the counter. The young man said to put back the cigars that I had taken off the counter. He said, `a couple of cigars,' and I said that I had not taken any and that I didn't even smoke cigars. He said, `Oh, yes, you have.' He said that the cigar box was on the counter near where I was standing and that I did take them. Then the police asked him if he was sure that I had taken the cigars. The young man said, `Yes, go ahead and search him.' I was then searched. This took place I guess about ten or twenty feet maybe from the drug company — from its entrance. I was on the street. I was across the street from the picture show on the same side of the drug store. It was about 9:10 o'clock at night. Lights were on in the store windows along the street. People were standing out in front of the drug company . . . After I had been searched by the policeman with Mr. Young's assistance, they did not find any cigars on me. I had not taken any cigars . . . the policeman was in uniform . . . I was acquainted with one of the clerks in there . . . He was on duty that night . . . He had nothing to do and took no part in this occurrence on the sidewalk. After the occurrence on the sidewalk, this young man over there (indicating R. E. Young, Jr.) wanted to shake hands with me . . . He said that he was sorry that he had made a mistake and begged my pardon."
Then, on cross-examination, plaintiff further testified: "I went to the store about ten minutes past nine. Was in there about three minutes . . . I went in the front of the store. I got the medicine about middleways of the store. The cigar stand is up at the front. I spoke with the man that I got the medicine from, Mr. Weidle, but nobody else . . . This young man (indicating Mr. Young, Jr.) was the one who was selling cigars . . . I have seen him more times than one at the cigar stand. He sells cigars there behind the cigar stand. When I started out I walked by the cigar stand. After I passed I heard him speak. He asked me to wait a minute. I did not stop. I went out and he called again and asked me to wait. I stepped on the outside and went west towards Pritchard Park. Then I heard him speaking again, asking me to stop. The policeman spoke to me first before I stopped. I had heard it before, but I did not stop and did not pay any attention to it. It was the same voice that I heard inside the store. It was the same voice as I come out and the same voice as I got outside. The policeman told me that somebody wanted to speak to me. That was what called my attention to it. When the policeman spoke to me . . . *Page 600 
I turned and saw that he was the one . . . He also told me that the box was full as I passed and that after I passed there were two cigars gone. Yes, I told him that he could search me . . . When he said that he was sorry he made this mistake, he shook hands with me . . . each of us went his way. I went home. I cannot say whether he went to the store or not. I did not know anybody else on the street besides the policeman . . . Outside of the boy who came from the drug store, I did not see anybody speak to the policeman. Nobody else spoke to this boy who was selling the cigars except myself and the policeman. . . . I have told everything that happened there . . . My sister was the first person I told about having this talk on the street with this boy."
The police officer, John E. Cutsill, also as witness for plaintiff, testified: "I was going east on Patton Avenue and walking by the drug store. I noticed a man running (as later corrected — `walking pretty fast') out of the drug store and one of the clerks come out behind him, hollering at him, asking him to stop. I finally stopped the man myself. The clerk (indicating Young, Jr.) said that this man had picked up two cigars . . . The clerk said that he had a couple of his cigars and I asked him if he was sure that he had them, and he said `Yes,' and I went ahead and searched him and I didn't find them. At that time I was in uniform."
From judgment as of nonsuit at close of plaintiff's evidence, plaintiff appeals to Supreme Court, and assigns error.
This is the question for decision: Was Richard E. Young, Jr., in pursuing plaintiff as he left the Asheville store of defendant, and, while upon a public street, in charging him with larceny of two cigars from the cigar stand in the store, and in causing him to be searched by a city police officer, acting within the line of his duty and exercising the functions of his employment as clerk at the said cigar stand?
In keeping with old principles, about which much has been written, the answer is "No."
The principle is well established that when the relationship of master and servant exists the master is liable for the acts of his servant, whether negligent or malicious, which result in injury to third persons when the "servant is acting within the line of his duty and exercising the functions of his employment."Roberts v. R. R., 143 N.C. 176, 55 S.E. 509, 8 L.R.A. (N.S.), 298, 10 Ann. Cas., 375; Willis v. R. R., 120 N.C. 508, *Page 601 26 S.E. 784; Daniel v. R. R., 136 N.C. 517, 48 S.E. 816, 67 L.R.A., 455, 1 Ann. Cas., 718; Sawyer v. R. R., 142 N.C. 1, 54 S.E. 793, 115 Am. St. Rep., 716, 9 Ann. Cas., 440; Marlowe v. Bland, 154 N.C. 140,69 S.E. 752, 47 L.R.A. (N.S.), 1116; Cotton v. Fisheries Products Co.,177 N.C. 56, 97 S.E. 712; Kelly v. Shoe Co., 190 N.C. 406,130 S.E. 32; Dickerson v. Refining Co., 201 N.C. 90, 159 S.E. 446; Lamm v.Charles Stores Co., 201 N.C. 134, 159 S.E. 444, 77 A.L.R., 923;Robertson v. Power Co., 204 N.C. 359, 168 S.E. 415; Parrish v. Mfg.Co., 211 N.C. 7, 188 S.E. 817; Snow v. DeButts, 212 N.C. 120,193 S.E. 224; West v. Woolworth Co., 215 N.C. 211, 1 S.E.2d 546; D'Armourv. Hardware Co., 217 N.C. 568, 9 S.E.2d 12. In Lamm v. CharlesStores Co., supra, Brogden, J., groups the lines of cases involving liability, and nonliability.
"The simple test," as states in Sawyer v. R. R., supra, quoting from Wood on Master and Servant, section 307, "is whether they were acts within the scope of his employment; not whether they were done while prosecuting the master's business but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him. By `authorized' is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties entrusted to him by the master, even though in opposition to his express or positive orders." Roberts v. R. R., supra; Cooper v. R. R.,170 N.C. 490, 87 S.E. 322; Dickerson v. Refining Co., supra.
The liability of the master does not depend upon the motive of the servant, such as his intent to benefit the employer or to protect his property, but upon the question whether in the performance of the act which gave rise to the injury the servant was, at the time, engaged in the service of his employer. Kelly v. Shoe Co., supra; Dickerson v. RefiningCo., supra.
In Daniel v. R. R., supra, a case in which plaintiff was arrested and searched for money which agent of defendant suspected he had stolen,Walker, J., stated that the general rule is that "when an agency is created for a specified purpose or in order to transact particular business, the agent's authority, by implication, embraces the appropriate means and power to accomplish the desired end. He has not only the authority which is expressly given but such as is necessarily implied from the nature of the employment . . . A servant entrusted with his master's goods may do what is necessary to preserve and protect them, because his authority to do so is clearly implied in the nature of the service, but when the property has been taken from his custody or stolen and the crime has already been committed, it cannot be said that a criminal prosecution is necessary for its preservation or protection. *Page 602 
This may lead to the punishment of the thief or the trespasser, but it certainly will not restore the property or tend in any degree to preserve or protect it. It is an act clearly without the scope of the agency and cannot possibly be brought within the limits of implied authority of the agent."
And in Willis v. R. R., supra, the Court also quoting from Wood on Master and Servant, 546, appropriately said: "`In the absence of express orders to do an act, in order to render the master liable, the act must not only be the one that pertains to the business, but must also be fairly within the scope of the authority conferred by the employment.'" And,Faircloth, J., writing for the Court, continues: "For illustration, a clerk to sell goods suspects that goods have been stolen and causes an arrest to be made. The master is not liable for the imprisonment or for the assault, because the arrest was an act which the clerk had no authority to do for the master, either express or implied." This is quoted with approval inDaniel v. R. R., supra, and in Parrish v. Mfg. Co., supra.
The general principle that a master or principal is not liable for the tortious act of his servant or agent unless the act be done by an authority, either express or implied, given him for that purpose by the master, applies to action for false arrest or imprisonment. 35 A.L.R., 645. Annotation (b).
The principle also extends to actions for slander when the defamatory words are uttered by the express authority of the master or within the course and scope of the agent's employment. Cotton v. Fisheries ProductsCo., supra; Sawyer v. Gilmer's, 189 N.C. 7, 126 S.E. 183; Oates v.Bank, 205 N.C. 14, 169 S.E. 869; Vincent v. Powell, 215 N.C. 336,1 S.E.2d 826. Yet, in connection therewith, Hoke, J., writing in the case of Cotton v. Fisheries Products Co., supra, observes that: "Owing to the facility and thoughtless way that such words are not infrequently used by employees, they should not perhaps be imputed to the company as readily as in more deliberate circumstances — that is, they should not be so readily considered as being within the scope of an agent's employment; but the basic principle is recognized and may be applicable, whenever, as stated, the slander has been expressly authorized by the company, or when the defamatory words have been used in the course of the agent's employment and authority for their utterance may be fairly and reasonably inferred," citing authorities.
Applying these principles to the case in hand, it is manifest that the employment of Richard E. Young, Jr., carried no implied authority to go out of the store and prefer charges against, and cause the search of a third party, as attributed to him. It is admitted in the pleadings that his father, Richard E. Young, was at the time the sole manager of the defendant's store. Where he was, the evidence fails to disclose. If *Page 603 
another had control of the store, the record is silent. On the other hand, the evidence tends only to show that Richard, Jr., was employed as a mere clerk behind the cigar stand, and that he sold cigars. Furthermore, if the custody of the cigars were under his control and, if his suspicion had been well founded, the cigars had already been stolen, and passed from his possession and out of the store. Under such circumstances the defamatory language used and the acts committed, while outside the store, and on the street, are clearly without the scope of his employment, and cannot possibly be brought within the limits of implied authority of an agent.
The judgment below is
Affirmed.