MRS. MINNIE GARDNER GILLIS v. THE GREAT ATLANTIC & PACIFIC TEA COMPANY AND GRADY LITTLE.

(Filed 20 October, 1943.)

**1. Libel and Slander §§ 2, 5—**

Words, spoken in the presence and hearing of others, containing the imputation of the commission of the crime of larceny, are slanderous and actionable *per se.*

**2. Libel and Slander § 13: Corporations §§ 25a, 25b—**

In an action for slander, where plaintiff's evidence tended to show in its most favorable light that one of two defendants, who was manager of his codefendant's store, while acting in the scope of his employment on the store premises, falsely charged in a loud voice, in the presence of others, that plaintiff had stolen a package from the said store, a case of actionable wrong is made out, in the absence of allegations in the answer that the charge was true or its utterance privileged, and motion for judgment of nonsuit was properly denied.

**3. Corporations §§ 20, 25a: Master and Servant § 21b—**

The designation "manager" implies general power and permits a reasonable inference that such manager is vested with the general conduct and control of his employer's business in and around the premises, and his acts are, when committed in the line of his duty and in the scope of his employment, those of his principal.

**4. Master and Servant § 21b: Corporations § 25a—**

When the servant is engaged in the work of his master, doing that which he is employed or directed to do, and an actionable wrong is done to

GILLIS *v.* TEA CO.

another, either negligently or maliciously, the master is liable, not only for what the servant does, but also for the ways and means employed by him in performing the act in question. And this principle is applicable to actions for slander.

**5. Libel and Slander §§ 5, 16—**

The author of a defamation, whether it be libel or slander, is liable for damages caused by, or resulting directly and proximately from, any secondary publication or repetition which is the natural and probable consequence of his act.

**6. Corporations § 25a: Master and Servant § 21b—**

Private instructions by employers to employees not to commit torts will not relieve the employer from liability for such acts committed by an employee within the scope of his authority and in the line of his duty, in an effort to preserve and safeguard his master's property. The master is liable even if the particular act, committed under such circumstances, was in violation of direct and positive instructions.

**7. Libel and Slander § 14—**

In an action for damages for slander, where in his charge to the jury the trial judge properly and fairly stated the evidence pertinent to the issues, and the contentions of the parties, in compliance with C. S., 564, and it appearing that the jury sufficiently understood the elements of actionable defamation necessary to be found before any liability could attach to defendants, there was no error in the court's failure to give a more elaborate definition of slander.

**8. Appeal and Error § 39a—**

It is only when the court's ruling on some material matter is prejudicial, amounting to the denial of a substantial right, that a new trial will be granted.

**9. Appeal and Error § 29—**

Exceptions not discussed in appellant's brief are deemed abandoned. Rule 28.

BARNHILL, J., dissenting.
WINBORNE, J., concurs in dissenting opinion.

APPEAL by defendants from *Clement, J.,* at March Term, 1943, of BUNCOMBE. No error.

This was an action to recover damages for slander. It was alleged that the defendant Little spoke of and concerning the plaintiff that she had stolen a bundle or package from defendant company's store, and further that the defamatory words were spoken while Little was acting within the scope of his employment by his codefendant as manager of the store. The defendants denied that the slanderous words alleged were spoken by defendant Little, or that the corporate defendant was liable therefor.

Upon issues submitted there was verdict that defendant Little spoke of and concerning the plaintiff, in the presence and hearing of another or others besides her husband, in substance, the words alleged in the complaint, and that defendant Little was at that time acting within the course and scope of his employment. Compensatory damages in the sum of $1,400.00 were awarded.

From judgment on the verdict, defendants appealed.

*Don C. Young and James S. Howell for plaintiff.*
*Williams & Cocke for defendants.*

DEVIN, J. This was an action for damages for slander, and comes to us on defendants' appeal from a judgment on the verdict of the jury in favor of the plaintiff. It was determined by the jury, in response to issues submitted, that the defendant Little, falsely charged, in the presence and hearing of others, that the plaintiff had stolen a package from the defendant company's store, of which he was the manager in charge, and that at the time and with respect to the defamation complained of defendant Little was acting within the scope of his employment by his codefendant.

As the basis of their appeal defendants assign certain errors in the rulings of the trial judge in the admission and exclusion of evidence, and in his instructions to the jury.

It is contended that defendants' motion for judgment of nonsuit should have been allowed, but we think plaintiff's evidence, considered in the light most favorable for her, warranted submission of the case to the jury. The testimony of the plaintiff, her husband and another witness that defendant Little uttered the charge in substance as alleged in the complaint, in the presence and hearing of another or others besides her husband, was sufficient to make out a case of actionable wrong on the part of defendant Little, in the absence of allegations in the answer that the charge was true or its utterance privileged. The words spoken containing the imputation of the commission of the crime of larceny were actionable *per se. Roth v. News Co.,* 217 N. C., 13, 6 S. E. (2d), 882; *Bryant v. Reedy,* 214 N. C., 748, 200 S. E., 896; *Flake v. News Co.,* 212 N. C., 780, 195 S. E., 55; *Elmore v. R. R.,* 189 N. C., 658 (671), 127 S. E., 710; *Cotton v. Fisheries Products Co.,* 177 N. C., 56, 97 S. E., 712; *Jones v. Brinkley,* 174 N. C., 23, 93 S. E., 372.

The defendant company's motion and its prayer for a directed verdict on the second issue were based on the further ground that there was no evidence to justify submission to the jury of the question of its liability for the defamatory words spoken by defendant Little.

The determinative question is whether the plaintiff's evidence affords any reasonable ground for the assumption that at the time and in respect to the utterance of the words complained of defendant Little was acting within the course and scope of his employment by his codefendant. Giving the plaintiff the benefit of every fact and inference of fact pertaining to the issues involved, which may be reasonably deduced from the evidence (*Cole v. R. R.,* 211 N. C., 591, 191 S. E., 353), it appears that Little was manager of the defendant company's large grocery store in Asheville and had full charge of the premises and operations at that location; that he had under his supervision and control the parking space for customers of the store which the company provided on its premises just in front of the store and between it and the street; that on either side of the walkway from the street to the store, a distance of 30 to 40 feet, were places for automobiles, arranged for the convenience of customers and to invite and encourage their patronage. The defendant Little referred in his testimony to this space as "my grounds." On the occasion alleged, Friday, 3 July, 1942, about noon, all this space was occupied by cars, and many people were going in and out the store, and to and from the automobiles. At the time it was thought by one witness that as many as 200 people were on the premises, in and around the front of the store. Plaintiff's car was parked facing the walkway and about 10 or 15 feet from the front door. Little, the manager, was on duty, standing near the front door watching the checkers or cashiers (there were five stands for this purpose), and the customers coming and going. It was his duty as manager to supervise, control and further his employer's business and to safeguard its property. He saw the plaintiff, accompanied by her husband, pass out of the store with a wrapped package in her arms, going to their parked car. The package proved to be a dressed chicken which plaintiff had purchased. Apparently, not having seen plaintiff's husband pay the cashier for the article, and reaching the conclusion that it was being stolen, Little went to the plaintiff's car, and in loud and angry tones charged her with stealing the package. He required her to come back into the store for investigation, whereupon the cashier told the manager the article had been paid for. Later Little went out to plaintiff's automobile and in a low voice apologized to her. This evidence is susceptible of the reasonable inference that Little, while on duty, and acting in the line of his duty to his employer with respect to premises and property of which he had been given charge and supervision, in the effort to preserve his employer's goods and prevent their wrongful removal, and as incidental to the performance of this duty, made the charge against the plaintiff of which she now complains.

We think the evidence of sufficient probative force to warrant submission to the jury of the question of the corporate defendant's liability.

In *Kelly v. Shoe Co.,* 190 N. C., 406, 130 S. E., 32, it was said: "The designation 'manager' implies general power and permits a reasonable inference that he was invested with the general conduct and control of defendant's business in and around their Wilmington store, and his acts are, when committed in the line of his duty and in the scope of his employment, those of the company." Though the employer may not be held liable if the employee of his own motion and incensed by an imagined wrong against his employer oversteps the bounds of lawful behavior, yet liability does flow from the wrongful acts of the employee committed in attempting to do what he was employed to do when his acts are done in the line of duty and within the scope of his employment. *Kelly v. Shoe Co., supra.* A distinction is to be observed between a wrongful act done to another by an employee in consequence of and to avenge an injury to his employer's goods already committed, and one done to prevent such injury from being committed or consummated, in the furtherance of his employer's interests. *Daniel v. R. R.,* 136 N. C., 517, 48 S. E., 816; *Gallop v. Clark,* 188 N. C., 186, 124 S. E., 145. In *Parrish v. Mfg. Co.,* 211 N. C., 7, 188 S. E., 817, the line of distinction is laid down between those cases in which the liability of the employer attaches for torts of the employee committed while the latter is engaged in what he was employed to do and while he is at the time about his employer's business, and those cases where the injury to a third person occurs while the employee is engaged in some private matter of his own, outside the legitimate scope of his employment, and without specific authority from the employer. A similar distinction was pointed out in *Martin v. Bus Line,* 197 N. C., 720, 150 S. E., 501, and *McLamb v. Beasley,* 218 N. C., 308, 11 S. E. (2d), 283; *D'Armour v. Hardware Co.,* 217 N. C., 568, 9 S. E. (2d), 12.

If the tort of the employee is committed in the course of doing the employer's work, and for the purpose of accomplishing it, it is the act of the employer, and he is responsible whether the wrong done be occasioned by negligence or reckless purpose to accomplish the employer's business in an unlawful manner. As was succinctly said by *Stacy, C. J.,* in *Dickerson v. Refining Co.,* 201 N. C., 90, 159 S. E., 446, "When the servant is engaged in the work of the master, doing that which he is employed or directed to do, and an actionable wrong is done to another, either negligently or maliciously, the master is liable, not only for what the servant does, but also for the ways and means employed by him in performing the act in question."

The principle that the employer is to be held liable for the torts of his employee when done by his authority, express or implied, or when they are within the course and scope of the employee's authority, is equally

applicable to actions for slander. *Cotton v. Fisheries Products Co., supra;*
*Sawyer v. Gilmers, Inc.,* 189 N. C., 7, 126 S. E., 183; 35 Am. Jur., 1001.

This principle was recently considered by this Court in case of
*Hammond v. Eckerd's,* 220 N. C., 596, 18 S. E. (2d), 151. While in
that case judgment of nonsuit as to the corporate defendant was affirmed,
the facts in some material respects were different from those in our case.
There the clerk at the cigar counter of defendant's store followed a
customer out of the store and along the street and charged him with hav-
ing stolen cigars. It was said in the opinion by *Winborne, J.,* "Applying
those principles to the case in hand, it is manifest that the employment
of Richard E. Young, Jr. (the cigar clerk) carried no implied authority
to go out of the store and prefer charges against, and cause the search of
a third party, as attributed to him. . . . On the other hand, the evidence
tends only to show that Richard, Jr., was employed as a mere clerk
behind the cigar stand, and that he sold cigars. Furthermore, if the
custody of the cigars were under his control and, if his suspicion had
been well founded, the cigars had already been stolen, and passed from
his possession and out of the store. Under such circumstances the de-
famatory language used and the acts committed, while outside the store,
and on the street, are clearly without the scope of his employment, and
cannot possibly be brought within the limits of implied authority of an
agent."

In *Lamm v. Charles Stores Co.,* 201 N. C., 134, 159 S. E., 444, an
action for malicious prosecution, it was held that the action of the
manager of the store in causing the issuance of a warrant for the plain-
tiff for uttering what was thought to be a forged check, which he had
accepted for goods sold, was beyond the scope of his employment. It
appeared in that case that defendant operated a cash store and had issued
written instructions if a manager cashed a personal check he would be
held responsible. Apparently the manager then was acting in his own
interest in having the warrant issued. In the case at bar defendant
Little had no personal interest in the matter save to preserve his em-
ployer's goods. In *Redditt v. Mfg. Co.,* 124 N. C., 100, 32 S. E., 392,
the opinion of *Faircloth, C. J.,* apparently draws a distinction between
public and private corporations with respect to defamation by an agent,
but in the opinion of *Douglas, J.,* concurred in by a majority of the
Court, the principle was adhered to that a corporation is liable for
slander uttered by its agent in the course and scope of his employment
and in aid of the company's interest.

The defendants' excepted to the admission of testimony tending to
show repetition of the slander by third persons not authorized by the
defendants. We think this evidence was competent under the rule laid
down in *Sawyer v. Gilmers, Inc.,* 189 N. C., 7, 126 S. E., 183. It was

there said, "We hold it to be the law in this State that the author of a defamation, whether it be libel or slander, is liable for damages caused by or resulting directly and proximately from any secondary publication or repetition which is the natural and probable consequence of this act. . . . If the defamation is uttered under such circumstances as to time, place or conditions as that a repetition or secondary publication is the natural and probable consequence of the original defamation and damage resulting therefrom, he is liable for such damages and evidence of such repetition or secondary publication and of damages resulting therefrom is admissible."

In the case at bar, as in the *Sawyer case, supra,* the trial judge cautioned the jury that this evidence was not offered to show defendant Little made the statement alleged, but only for the purpose of showing whether or not it injured plaintiff's reputation. It was in evidence that the defamatory words complained of here were uttered in a public place, in loud and angry tones, and that at the time and place of their utterance a large number of people were in close proximity. One witness, who testified he heard the words spoken, was in an automobile parked in a driveway near-by.

Defendant excepted to the exclusion of the question asked defendant Little as to what instructions had been given him by the corporate defendant "relative to making any statement to people that might be interpreted as accusing them of stealing." The witness, if permitted, would have answered, "We are never to accuse anyone as to taking anything and to lay no accusation against anyone of having taken anything." While it does not appear when, how, by or to whom the instructions referred to were given, such evidence, if properly presented, may have been competent in corroboration of the witness' testimony that he did not make the accusation charged. But private instructions of this character would not have had the effect of relieving the defendant from liability for defamation uttered by the manager if in fact he was at the time acting within the scope of his authority and in the line of his duty, in the effort to preserve and safeguard the company's property and to prevent its being carried off the premises. Otherwise an employer could avoid all liability for the torts of his employees by the simple expedient of instructing them not to commit them. It is not necessary that the employer should have known that the act complained of was to be done. It is enough if the injury is caused by the wrongful act of the employee while acting in the scope of his employment. *Pierce v. R. R.,* 124 N. C., 83, 32 S. E., 399. "To make the master liable it is not necessary to show that he expressly authorized the particular act; it is sufficient to show that the servant was acting at the time in the general scope of his authority, and this although he departed from his instructions,

abused his authority, was reckless in the performance of his duty, and inflicted unnecessary injury." *Gallop v. Clark,* 188 N. C., 186, 124 S. E., 145. "The master is liable even if the particular act committed under such circumstances was in violation of direct and positive instructions." *Barnhill, J.,* in *West v. Woolworth Co.,* 215 N. C., 211, 1 S. E. (2d), 546.

Where the wrong done to a third person is within the general scope of the employee's authority, is in the line of his duty, and is in furtherance of the employer's business a deviation from actual authority will not necessarily foreclose recovery, *Cole v. Motor Co.,* 217 N. C., 756, 9 S. E. (2d), 425, though a substantial deviation from the scope of the duties imposed on the employee will relieve the employer of liability for those acts not immediately connected with his employer's business. *Parrott v. Kantor,* 216 N. C., 584, 6 S. E. (2d), 40; *McLamb v. Beasley, supra.*

We do not regard the exclusion of the proffered testimony under the circumstances as prejudicial to the corporate defendant, or sufficient to overthrow the verdict and judgment in plaintiff's favor. It is only when the court's ruling on some material matter is prejudicial, amounting to the denial of a substantial right that a new trial will be justified. *Collins v. Lamb,* 215 N. C., 719, 2 S. E. (2d), 863; *Wilson v. Lumber Co.,* 186 N. C., 56, 118 S. E., 797.

Defendants noted exception to the judge's charge in that his definition of slander was not sufficiently comprehensive. The words excepted to appear to have been stated at the outset of the charge in connection with general reference to the nature of the case. However, in his instructions to the jury more particularly addressed to the first issue, the trial judge stated the essential facts necessary to be found from the testimony before the issue as to the malicious utterance in the presence of others of the defamatory words alleged could be answered in favor of the plaintiff. The jury was further cautioned that unless they found by the greater weight of the evidence that defendant Grady Little used in substance the words "you stole that bundle," or "you have got a bundle you stole," they should answer the first issue no. The evidence pertinent to the several issues was stated to the jury and the contentions of the parties thereon fairly arrayed. There is no suggestion that C. S., 564, was not complied with. We think the jury sufficiently understood the material elements of actionable defamation necessary to be found before any liability could attach to the defendants. Under these circumstances, we think the absence of more elaborate definitions may not be held for error. The court's instructions as to agency and scope of authority seem to have been in substantial compliance with the decisions of this Court.

The court declined defendants' requests for instructions predicated on the assumption that only the witness Austin Livingston heard the slanderous words spoken by defendant Little on this occasion. These requests were properly refused. The evidence offered in support of plaintiff's claim, considered in the light most favorable to her, opened the door to the wider implication that the accusation was made in the presence and hearing of other persons besides Livingston and her husband.

Other exceptions noted at the trial not discussed in defendants' brief are deemed abandoned. Rule 28.

Upon consideration of the entire case as it appears in the record, we conclude that the verdict and judgment should be upheld.

No error.

BARNHILL, J., dissenting: That the manager of the corporate defendant was acting in the course and scope of his employment at the time complained of would seem to be supported by this record. In this conclusion I concur. However, I cannot agree that no material or prejudicial error was committed in the trial.

Slander is the speaking of defamatory words of and concerning a person in the presence and hearing of another. The defamatory language does not give rise to a cause of action unless some third party hears and understands the words used in their defamatory sense. That is, the language must be defamatory, and it must be so understood by at least one hearer. *Hedgepeth v. Coleman,* 183 N. C., 309.

Only one person other than plaintiff's husband testified that he heard. He understood Little to say, "You took the package." This is quite different from "You stole the package." The one is slanderous *per se;* the other is not.

Yet the sum total of the court's charge on the first issue was as follows:

"Slander is where words are falsely spoken which are injurious to the reputation of another. . . .

"Now, Gentlemen of the Jury, the burden of that issue (the first issue) is on the plaintiff to satisfy you by the greater weight of the evidence before you would answer that issue Yes. If the plaintiff has done so, you will answer it Yes. If the plaintiff has not done so, then you will answer it No. . . .

"It is not necessary that you find he used the exact words that she 'stole' the chicken. Notice the words of the issue—Did he speak of and concerning her 'in substance the words alleged in the complaint,' which is that she had stolen the chicken?"

The second paragraph above quoted was then repeated.

At no time, even in the statement of contentions, did the court instruct the jury that plaintiff must show that the defamatory language was

used "in the presence and hearing of others." Nor was the jury instructed that it must appear that the language was understood in its defamatory sense.

There are exceptions in the record which challenge the sufficiency of this charge, and I am of the opinion that they should be sustained.

The witness who heard did not know the defamed, and he did not repeat the defamation until more than six months thereafter. The plaintiff, on the other hand, voluntarily gave currency to the charge by the institution of this action eleven days after the occurrence. Even so, the court in its charge on the issue of damages draws no distinction between repetitions of the charge traceable to Little's utterance on the one hand and those which proximately resulted from the institution of the action on the other. Surely plaintiff cannot complain because of "talk" which resulted from her own act.

I vote for a new trial.

WINBORNE, J., concurs in dissent.