368 F.2d 25
 James A. GOFORTH, Sr., Appellant,
v.
AVEMCO LIFE INSURANCE COMPANY OF SILVER SPRING, MARYLAND, Appellee.
AMERICAN CROSS PLAN, INC., Appellant,
v.
AVEMCO LIFE INSURANCE COMPANY OF SILVER SPRING, MARYLAND, Appellee.
 No. 10094.
 No. 10095.
 United States Court of Appeals Fourth Circuit.
 Argued December 10, 1965.
 Decided October 31, 1966.
 
 Clyde C. Randolph, Jr., and Harold R. Wilson, Winston-Salem, N. C., for appellants.
 Bynum M. Hunter, Greensboro, N. C. (James R. Turner, and Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., on brief), for appellee.
 Before SOBELOFF and BOREMAN, Circuit Judges, and MAXWELL, District Judge.
 BOREMAN, Circuit Judge:
 
 
 1
 American Cross Plan, Inc., and James A. Goforth, Sr., a former president and general manager of that corporation, brought actions for libel against Avemco Life Insurance Company ofilver Spring, Maryland (hereinafter "Avemco"). The two actions, presenting issues common to both, were consolidated for trial. Following the plaintiffs' presentation of evidence the court directed a verdict against them on the ground that the communications complained of were qualifiedly privileged and that the evidence was insufficient to establish malice and thereby defeat the privilege. Both plaintiffs have appealed. We agree with the result reached by the court below and affirm the judgments.
 
 
 2
 Jurisdiction is based upon diversity of citizenship. American Cross Plan is chartered under the laws of North Carolina and Goforth is a citizen of the same state. Avemco is a Maryland corporation. The law of North Carolina governs the disposition of the cases.[1]
 
 
 3
 The communications involved are contained in a series of letters, introduced into evidence by appellants as Exhibits A through H, which were written by Avemco in the early fall of 1963. At that time, Goforth was serving as American Cross Plan's chief executive officer, a position which he had filled for several months.[2] The letters in question effected or pertained to Avemco's cancellation of American Cross Plan's authority to act as its agent or subagent in the sale of its insurance policies.[3]
 
 
 4
 The business relationship between American Cross Plan and Avemco, which had existed for only a few months prior to its termination, evolved in roundabout fashion. Before its inception, American Cross Plan had been the agent or subagent of Accident Indemnity Insurance Company. This earlier arrangement resulted from an agreement which American Cross Plan had entered into on April 24, 1962, with American Cross Agency, a sole proprietorship owned by one George N. Lefler, who was a general agent of Accident Indemnity Insurance Company. The sale of Accident Indemnity Insurance Company's policies constituted the only business of American Cross Plan.
 
 
 5
 American Cross Plan's affiliation with Avemco was brought about by the latter's merger with Accident Indemnity Insurance Company. Avemco, the surviving corporation, assumed all of Accident Indemnity Insurance Company's assets and liabilities. The only indication in the record of the date of the merger is supplied by the oral statement at the trial by Avemco's counsel that the merger occurred in July of 1963.
 
 
 6
 At the time of the merger, Avemco was not licensed to do business in North Carolina. In September of 1963, officials of Avemco conferred with the North Carolina Department of Insurance concerning the merger and obtention of the needed license. Avemco maintains that all of the allegedly libelous statements contained in the letters subsequently written by it were either mere reiterations of, or statements based upon, information which was conveyed to it at these September discussions by the State's administrative arm for the regulation of the insurance business. The appellants introduced no evidence which would tend to negate this assertion. In fact, certain portions of their argument are based upon the assumption that Avemco was only parroting charges which the Insurance Department had made to it.[4] Defendant asserts also that the Insurance Department indicated at these meetings that Avemco would not be licensed in North Carolina and that the licenses then held in the name of Accident Indemnity Insurance Company might be revoked unless it cancelled the agency relationship which existed between it and American Cross Plan.
 
 
 7
 Whatever may be fact with respect to the truth of these assertions,[5] Avemco did, in any event, write a letter to Goforth on September 30, 1963, stating:
 
 
 8
 "It has just been brought to our attention by the North Carolina Department of Insurance that you have been selling stock in a corporate entity in which you are involved, namely, `The American Cross Plan, Inc.', and further, that said stock is not registered with the proper auorities as required by North Carolina law.
 
 
 9
 "It is further alleged that in offering either this stock or these debentures, or whatever you are selling, you have been using the financial statements of our company to substantiate the financial strength of your organization and, further, as an inducement to prospective buyers, it is also alleged that you have been offering insurance to be issued by our company at a discount to those individuals.
 
 
 10
 "Based on this information, we have no other alternative but to terminate effective this date your authority to represent our company as an agent or otherwise."5a
 
 
 11
 The publication to a third person which is a required element of actionable defamation was accomplished by Avemco with respect to this letter, appellants' Exhibit A, by sending copies thereof to the Department of Insurance and to George N. Lefler. The first two charges recited in this letter — the claim that Goforth was selling unregistered stock and offering insurance policies at discount rates — are repeated in several of the other letters which are claimed to be libelous.[6] It is unnecessary to reproduce in full the contents of each of those letters. We conclude that two of them, which we set forth in a footnote,[7] are devoid of any defamatory matter. Pertinent portions of the remaining letters are summarized or quoted from in the next succeeding paragraphs.
 
 
 12
 Appellants' Exhibit B is Avemco's letter of September 30, 1963, to the Deputy Commissioner of the Department of Insurance requesting that appellants' license to represent it be cancelled. This letter cited Avemco's receipt of information with respect to the first two charges contained in Exhibit A as its reason for the request.
 
 
 13
 On October 1, 1963, S. J. Solomon, President of Avemco, wrote a letter (appellants' Exhibit C) to Edwin S. Lanier, the North Carolina Commissioner of Insurance, in which he stated:
 
 
 14
 "On my return to Silver Springs after the meeting with you, I immediately discussed with Mr. Worthington the matter called to my attention about the sale of stock by the American Cross Plan, Inc. I also discussed with him that that agency was offering insurance of Accident Indemnity Insurance Company at a discount to subscribers of stock in that company, inducing in some cases subscribers of stock to withdraw monies from Savings and Loan institutions. I appreciate very much your ready acceptance of my statement that under no circumstances would we tolerate either of these actions. Mr. Worthington agreed fully with the viewpoint expressed to you.
 
 
 15
 "After a full investigation by Mr. Worthington, we have today cancelled the license of Mr. J. A. Goforth to represent Accident Indemnity Insurance Company operating as The American Cross Plan, Inc., in Winston-Salem, North Carolina. * * *."
 
 
 16
 Appellants' Exhibit D was Avemco's letter to Lefler dated September 30, 1963. That letter provided in part as follows:
 
 
 17
 "Pursuant to our telephone conversation of this date concerning the aforementioned [American Cross Plan], I would like to repeat, once again, my statement to the effect that I am most upset by what I understand has been happening and would like all such activity stopped immediately.
 
 
 18
 "I am referring, specifically, to the fact that `The American Cross Agency (sic) Plan, Inc.', a sub-agency of yours, is alleged to be selling some form of stock or securities which is not registered with the proper authorities in the State of North Carolina and, further, as an inducement to make such sales, they are offering to discount insurance premiums for policies sold through our company to stockholders in their organization. For that matter, I am not interested in having any agency selling stock or investments of any kind and this whether such stock or other is registered or not. * * *
 
 
 19
 "In accordance with our understanding, the company does not wish any commissions whatsver paid by you to any unlicensed persons and we would ask you to guide yourself in accordance.
 
 
 20
 "For the matter of our files, I would ask you to be kind enough to forward us, as soon as possible, a copy of the letter you write to `The American Cross Plan, Inc.', terminating their contract with your office."
 
 
 21
 On October 8, 1963, Lefler, the general agent of Avemco, wrote Goforth cancelling his agency's contract with American Cross Plan. This letter (Exhibit G) did not repeat any of the charges contained in Exhibit A, but stated that:
 
 
 22
 "The above action [termination of the contract] is taken due to the fact that American Cross Plan, Inc., has violated the following paragraphs of its contract:
 
 
 23
 "`(2) The "Agency" shall submit no accident, health, accident and health or hospitalization applications to other companies or agencies except that first rejected by the "Company."
 
 
 24
 "`(10) The "Agency" shall endeavor to promote the interest of the "Company" as contemplated by this agreement and shall so conduct itself as not to affect adversely the business, good standing or reputation of itself or of the "Company."
 
 
 25
 "`(11) The "Agency" agrees that it will not nor will it permit any misrepresentation, misleading statement or incomplete comparisons oral or written to be made by its agents or employees, by any circulars, advertising matter or literature, which would be detrimental to the interest of the "Company" or in violation of any of the laws, rules, or regulations of any state or city, Department or Bureau having jurisdiction thereof, nor will it violate or permit the violation of any of the rules and regulations of the "Company."'"
 
 
 26
 A copy of this letter was forwarded to the Department of Insurance.
 
 
 27
 The last of the letters introduced into evidence by the appellants, their Exhibit H, was written on October 30, 1963, to an individual named Jesse M. Hartsell, an agent of American Cross Plan. This letter stated as follows:
 
 
 28
 "Your letter to Mr. Worthington came to my attention this morning for explanation and answer. Following allegations from the North Carolina Department of Insurance as to practices being engaged in by the American Cross Plan, Incorporated, it became necessary for our company to cancel its license with Mr. James Goforth and his agency force in Winston-Salem, North Carolina.
 
 
 29
 "Since the alleged charges involved the sale of unregistered stock and securities by the American Cross Plan, Inc., and the offering of Accident Indemnity Insurance policies at a discount to subscribers of stock in that company, it became necessary to cancel the licenses of the entire agency force for violation of its contract.
 
 
 30
 "This action was taken due to the fact the American Cross Plan, Inc., had violated the following paragraphs of its contract:
 
 
 31
 (The letter here refers to the three paragraphs of the contract quoted above as part of Exhibit G.)
 
 
 32
 * * * * * *
 
 
 33
 "I am in hopes that this explanation is satisfactory.
 
 
 34
 "I might add here that we will have no objection if you desire to become relicensed with our company as an agent, working through our American Cross Agency, Greensboro, under Mr. George Lefler."
 
 
 35
 Copies of Exhibit H were forwarded to Moore, the Deputy Commissioner, and to Lefler.
 
 
 36
 There was testimony to the effect that the charges against appellants were false. In the posture in which this case comes before us, a verdict having been directed against the appellants, we must assume the falsity of the charges. The late Judge Parker expressed the pertinent rule as follows in Burcham v. J. P. Stevens & Co., 209 F.2d 35 (4 Cir. 1954):
 
 
 37
 "It is well settled that on a motion for a directed verdict * * *, the evidence must be considered in the light most favorable to the party against whom the directed verdict * * * is asked, that any conflict in evidence must be resolved in his favor and that every conclusion ornference that can be legitimately drawn therefrom in his behalf must be drawn."
 
 
 38
 Viewed as false, the charges made in the Avemco letters are clearly defamatory. Disposition of the case does not require that we decide whether the letters are, under North Carolina law, libelous per se or only upon proof of special damages, although we think that under traditional doctrine they might fairly be regarded as falling in the former category. Each of the three accusations repeated in Exhibit A attributes unlawful conduct to American Cross Plan. N.C. Gen.Stats. § 78-6 (1965) imposes a general requirement that all securities offered for sale or sold in North Carolina be registered in a prescribed manner. An offer to sell an insurance policy at a discount for which no provision is made in the policy itself is prohibited by N.C. Gen.Stats. § 58-44.5 (1965). While there is no elaboration in the record or the briefs as to the precise manner in which American Cross Plan was utilizing Avemco's financial statements to bolster the appearances of its own financial position, an implication of fraudulent dealing unavoidably arises from the accusation. These charges of illegality certainly tend to prejudice the appellants' reputation for business integrity. Although Exhibit G does not repeat any of the three charges made in Exhibit A, we think Lefler's assertion on behalf of his principal, Avemco, that appellants had violated the three paragraphs of the American Cross Plan-American Cross Agency contract which are quoted in his letter also unquestionably reflects unfavorably upon appellants' business reputation.
 
 
 39
 Our affirmance of the District Court's ruling that these defamatory communications are not actionable is based upon our agreement with the court's conclusion that the communications are qualifiedly privileged.[8] These communications were clearly published under circumstances which cloak them with a prima facie qualified privilege. In Hartsfield v. Harvey C. Hines Co., 200 N.C. 356, 157 S.E. 16 (1931), the North Carolina Supreme Court stated:
 
 
 40
 "Qualified privilege rests upon the fact of interest or duty. That is to say, if the speaker of the alleged slanderous words has an interest or duty in the subject-matter of the conversation, and the hearer has an interest or duty with respect to the subject-matter of the conversation, then the doctrine of qualified privilege applies." 157 S.E. at 19.
 
 
 41
 In H. E. Crawford Co. v. Dun & Bradstreet, Inc., 241 F.2d 387 (4 Cir. 1956), a case which involved the application of North Carolina law, we held that a defamatory writing was qualifiedly privileged because it
 
 
 42
 "related to something in which the writer had an interest or duty, to one having a corresponding interest or duty, and was made in protection of that interest or in performance of the duty." 241 F.2d at 393.
 
 
 43
 The only third parties to whom Avemco published its defamatory letters were Lefler, Hartsell and certain officials of the Department of Insurance. The interest of these parties in receiving the information contained in the letters and Avemco's interest in supplying it to them, are so clearly evident from what has been shown that amplification is unnecessary.
 
 
 44
 Of course, as we said in H. E. Crawford Co. v. Dun & Bradstreet, Inc., supra, "The availability of the defense of qualified privilege may * * * be lost if * * * made with actual malice (as distinguished from legal malice, inferred merely from the falsity of the publication)." 241 F.2d at 395. The essential meaning of "actual malice" is "bad faith." Ibid.
 
 
 45
 The appellants contend that an inference of malice or bad faith on the part of Avemco can reasonably be drawn from the evidence adduced at trial. Their primary thesis is that the evidence reveals an obvious attempt by Avemco to curry favor with the Department of Insurance at their expense; that Avemco did not effect an orderly cessation of a business arranment, but that it conducted a "ceremonial execution" of the appellants in an effort to obtain favorable consideration of its merger.
 
 
 46
 Avemco readily admits that it clearly appears that it was placed "under the gun" by the Insurance Department and that it had no alternative but to terminate its relationship with the appellants. In that sense, it might be said that Avemco was trying to ingratiate itself with the Department. However, the fact that Avemco's actions may have been compelled by the Department tends, in our opinion, to negate malice on its part. Only if it actually proceeded to carry out its required mission with an excessive enthusiasm, or ceremonial flair, does an indication of bad faith appear.
 
 
 47
 The evidence here does not support such a claim. An examination of the letters reveals them to be temperate and restrained in tone. It does not appear that the writing of any one of them was unnecessary. Each letter either dealt with a different point or was mailed to a different addressee. While the Department of Insurance was exposed to repetition of the defamatory material by reason of its receipt of copies of most of the letters, it would have been most unbusinesslike and most imprudent for Avemco to fail to keep the Department, whose function it is to be concerned in such matters, abreast of developments by the device of forwarding copies of pertinent correspondence to it.
 
 
 48
 The appellants argue that in any event it was completely unnecessary for Avemco to make the accusations against them in the letters addressed to the Department of Insurance since that body knew of the charges and had itself informed Avemco thereof. However, in our view, ill will cannot be inferred from Avemco's use of specifics rather than veiled allusions. The Department of Insurance is involved with a great variety of matters. We have no way of knowing whether the appellants' activities were among its foremost concerns. A concise statement by Avemco, in explicit terms, as to what action it was taking and the reason therefor seems not only proper, but perhaps necessary to the effective communication of its intended message.
 
 
 49
 The appellants contend that malice is evidenced by Avemco's statement in Exhibit C that appellants' offering of insurance at a discount to purchasers of stock in American Cross Plan was "inducing in some cases subscribers of stock to withdraw monies from Savings and Loan Institutions." We find nothing malicious in this statement. It is reasonable to assume that persons buying stock or insurance from appellants were expected to pay for their purchases. It adds nothing to the charge of unlawful discounting to refer to the manner in which the purchasers obtained the needed funds.
 
 
 50
 Another statement in Exhibit C is relied upon by the appellants as furnishing some indication of malice. In that letter, Avemco stated, "after a full investigation by Mr. Worthington, we have today cancelled the license of Mr. J. A. Goforth to represent Accident Indemnity Insurance Company." (Emphasis added.) The Mr. Worthington to whom reference was made was Vice President of Avemco. The appellants contend that no full investigation was made by Worthington and rely upon Avemco's answer to one of its interrogatories which inquired:
 
 
 51
 "What investigation was made by Mr. Worthington prior to October 1, 1963, with respect to cancellation of the license of J. A. Goforth to represent Accident Indemnity Insurance Company, operating as the American Cross Plan, Inc., in Winston-Salem, North Carolina?"
 
 Defendant answered:
 
 52
 "Messrs. S. J. Solomon, Joseph R. Greenwood, General Counsel of Avemco Life Insurance Company, and Braxton Schell, conferred with authorities of the North Carolina Department of Insurance. These authorities indicated that a full investigation had been made, and that James A. Goforth and the American Cross Plan were violating the insurance laws and regulations of the Iurance Department as well as the securities laws of North Carolina. Based upon this information, and after reviewing this information, Gerald deT. Worthington cancelled the license of James A. Goforth. * * *"
 
 
 53
 There is no apparent inconsistency between Avemco's statement in Exhibit C and its answer to the interrogatory. Avemco did not claim in the letter that Worthington had made an independent investigation. More importantly, the word "investigation" does not have a single, clearly defined meaning. "Study" and "scrutinize" are recognized synonyms of the word "investigate." Webster's New International Dictionary (2d ed. 1961). Thus a "full investigation" could mean a full study by Worthington of information obtained and compiled by other persons, which is exactly what Avemco's answer to the interrogatory discloses. The claimed inconsistency does not provide a sound or substantial basis to support a finding of malice.
 
 
 54
 The appellants also contend that malice toward them is shown by Avemco's stated willingness to relicense Hartsell. This might be true if there had been any evidence that Hartsell played any responsible part in the unlawful activities of American Cross Plan which were the cause of Avemco's asserted malignity. Discriminatory treatment of the appellants would then be apparent. However, from all that appears the only reason that Avemco cancelled the licenses of Hartsell and other members of American Cross Plan was because of their connection with that corporation, and not because of any personal wrongdoing by them. Thus Avemco's willingness to have Hartsell represent it independently of the appellants is readily understandable and provides no springboard for assuming malice.
 
 
 55
 The appellants' last point with respect to the malice issue concerns Avemco's direction in Exhibit D that Lefler pay no "commission whatsoever" to any "unlicensed persons." They contend that American Cross Plan is thereby deprived of large commissions on renewal premiums paid upon policies produced by it and that under the contract executed on April 24, 1962, it has a vested right to such commissions. The contract, which was introduced into evidence as Appellants' Exhibit I, does provide that:
 
 
 56
 "(28) The `General Agent' [Lefler] will allow lifetime vested renewal commissions on all policies produced by the `American Cross Plan, Inc.'
 
 
 57
 * * * * * *
 
 
 58
 "(29) In the event of termination of contract between the `General Agent' and ACCIDENT INDEMNITY INSURANCE COMPANY, the `General Agent' shall continue to pay vested renewal commissions in accordance with this contract, to the `American Cross Plan, Inc.' so long as he shall live and be paid vested renewals for business written by the `American Cross Plan, Inc.'"
 
 
 59
 Even if we assume that appellants' position with respect to American Cross Plan's right to continued commissions on renewal premiums is legally invincible[9] and that Avemco was therefore acting in bad faith in forbidding further payment of such commissions, there is still no basis from which to infer bad faith with respect to the writing of the letters. An inference of malice in that regard can arise only if the defamatory comments were in some degree motivated by the hope of establishing a basis for refusing further payment of such commissions. There is no direct evidence that Avemco was so motivated, and the only circumstantial evidence to that effect is provided by the very fact that Avemco directed nonpayment of the commissions. This provided an insufficient foundation on which to submit the issue of malice to the jury. It would appear unreasonable to conclude that Avemco would cancel the contract and expose itself to liability for damages for its breach simply to free itself of any obligation to pay the renewal commissions to American Cross Plan. That corporation was the exclusive agent in a thirty-three county area of North Carolina andhe loss due to consequent disruption in the marketing of its policies might very well offset or exceed any advantage to be gained by the escape from liability for payment of the renewal commissions.
 
 
 60
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Both parties agree, at least tacitly, that North Carolina law is controlling. Insofar as the record discloses, the only contact which the instant case has with another state is provided by Avemco's Maryland citizenship. All of the publications of allegedly libelous material which are revealed by the record occurred in North Carolina and any injuries, whatever their nature, which may have been incurred by the corporate and individual appellants were apparently localized in North Carolina. With respect to the choice of law in such actions, see generally Developments in the Law — Defamation, 69 Harv.L.Rev. 875, 953-57 (1956)
 
 
 [2]
 Goforth began working for American Cross Plan in September of 1962 as a vice president of the corporation. He was appointed General Sales Manager on or about April 9, 1963, and became president of the corporation on June 17, 1963
 
 
 [3]
 Whether American Cross Plan was an agent or a subagent of Avemco is a question which need not be answered here
 
 
 [4]
 For example, appellants state in their brief that:
 "If defendant possessed information that the North Carolina Department of Insurance did not already have, then plaintiffs cheerfully concede that upon appropriate inquiry, it was defendant's duty to communicate it to the Commissioner of Insurance. However, such was not the case here. All of the information received by the defendant in this case came from the conference referred to in defendant's answer to Interrogatory No. 21 [conference with officials of the Insurance Department]. Defendant was not furnishing information to the North Carolina Department of Insurance. It was an echo, disguished to look like information." (Emphasis added.)
 
 
 [5]
 A determination of the truthfulness of these claims was unnecessary to the trial court's decision
 5a. The belief of the Department of Insurance that American Cross Plan had been engaging in the named practices apparently stemmed from an investigation which it had made in conjunction with the office of North Carolina's Secretary of State, into the activities of that corporation following a complaint by a private individual. On August 30, 1963, the Secretary of State ordered American Cross Plan to cease and desist from offering its securities for sale to the public. The Secretary's letter to American Cross Plan with respect to this matter stated that:
 "Documented evidence furnished this office makes it appear that your corporation has issued and sold to the investing public in this State securities which have not been registered under the provisions of our Securities Law and are not exempt from such registration provisions."
 The letter made no mention of the other charges which Avemco claims the Department made against American Cross Plan at the September meeting.
 
 
 [6]
 The charge that Goforth was using the financial statements of Avemco to provide a more favorable picture of American Cross Plan's financial situation does not reappear in the other letters
 
 
 [7]
 Appellants' Exhibit E was a letter written by Avemco to F. D. R. Moore, the Deputy Commissioner of Insurance, on October 2, 1963. The body of this letter states:
 "This office respectfully requests the cancellation of license on the aforementioned [one Carlos Columbia Shaver] due to the fact he is an agent for `The American Cross Plan, Inc.,' and we no longer desire his services as a representative of our company. The operations of this agency, managed by Mr. J. A. Goforth, were explained in our recent correspondence to you at which time cancellation of Mr. Goforth's license was requested.
 "Your immediate attention to this matter will be greatly appreciated."
 While we have found no authority onthe point, we are of the opinion that a mere reference to another writing which contains defamatory matter does not constitute an actionable repetition or republication of that libelous material. A contrary view would foster an unjustifiable proliferation of actionable publications in spite of the facts that a reference to a libelous writing may be unavoidable at times and that a reference to such a writing is far more consistent with good faith than would be a full restatement of the contents.
 Appellants' Exhibit F was a letter to the North Carolina National Bank of Winston-Salem, North Carolina, dated October 2, 1963. Here again we reproduce the entire body of the letter:
 "This is to advise that Mr. Goforth's license to represent our company for the sale of insurance in the State of North Carolina has been cancelled and we, therefore, respectfully request the cancellation of the letter of authorization previously forwarded to you from our offices in Greensboro, North Carolina.
 "We greatly appreciate the fine cooperation we have received on the behalf of your establishment and should we be in need of your fine service at any time in the future, we shall be most pleased to contact you."
 There is no explanation in the briefs or the record as to the nature of this "letter of authorization."
 
 
 [8]
 Appellants' claim that Avemco cannot avail itself of the defense of privilege because it did not plead it in its answer is without merit. The Order on Final Pre-Trial Conference, entered March 5, 1963, clearly notes that Avemco contends that the letters, identified as Exhibits A through H, were privileged. Rule 15(b) of the Federal Rules of Civil Procedure provides that the pleadings may be amended to conform to the evidence at any time, even after judgment, and that a failure so to amend does not affect the result of the trial of the issues
 
 
 [9]
 Determining the precise meaning of the word "vested" might involve a substantial question of contract interpretation, particularly if American Cross Plan had in fact been selling Avemco's policies at discount rates. If there has been an unjustified breach of contract the right to the recovery of damages resulting therefrom should be tested in an appropriate action